*317 OPINION OF THE COURT
Rivera, J.
We conclude that where an insurance policy is restricted to liability for any bodily injury “caused, in whole or in part,” by the “acts or omissions” of the named insured, the coverage applies to injury proximately caused by the named insured. The Appellate Division erroneously interpreted this policy language as extending coverage broadly to any injury causally linked to the named insured, and wrongly concluded that an additional insured may collect for an injury caused solely by its own negligence, even where the named insured bears no legal fault for the underlying harm. We reject this “but for” causation formulation of the policy and, on this appeal, reverse the Appellate Division’s denial of summary judgment in favor of the insurance company on the issue of coverage.
I.
Plaintiff, the Burlington Insurance Company, issued an insurance policy to nonparty Breaking Solutions, Inc. (BSI) listing as additional insureds defendants, the New York City Transit Authority (NYCTA) and MTA New York City Transit (MTA). Burlington denied coverage to NYCTA and MTA on the grounds that defendants were not additional insureds within the meaning of the policy because NYCTA was solely responsible for the accident that caused the injury. This appeal requires that we interpret whether the additional insured language of the policy provides coverage where the named insured is not negligent.
According to the undisputed facts, NYCTA contracted with BSI to provide equipment and personnel and for BSI to perform tunnel excavation work on a New York City subway construction project. To comply with NYCTA’s insurance requirements, BSI purchased commercial general liability insurance from Burlington with an endorsement that listed NYCTA, MTA, and *318 New York City as “additional insureds.”[1] As specified by NYCTA, BSI agreed to use language in the endorsement adopted from the latest form issued by a trade organization known as the Insurance Services Office (ISO), and which provides, in relevant part, that NYCTA, MTA, and the City are additional insureds:
“only with respect to liability for ‘bodily injury’, ‘property damage’ or ‘personal and advertising injury’ caused, in whole or in part, by:
“1. Your acts or omissions; or
“2. The acts or omissions of those acting on your behalf.”
During the coverage period, an NYCTA employee fell off an elevated platform as he tried to avoid an explosion after a BSI machine touched a live electrical cable buried in concrete at the excavation site. The employee and his spouse brought an action against the City and BSI in federal court, asserting Labor Law claims, negligence, and loss of consortium (Kenny v City of New York, 2011 WL 4460598, 2011 US Dist LEXIS 109057 [ED NY, Sept. 26, 2011, No. 09-CV-1422 (RRM)(WP)]).
Pursuant to BSI’s policy, the City tendered its defense in the federal action to Burlington, which Burlington accepted subject to a reservation of rights based on the City’s qualification as an additional insured. Burlington withdrew its reservation, however, after receiving NYCTA’s letter to BSI that it would not make payments under the contract unless Burlington agreed to provide coverage for the City’s defense and indemnification without reservation.
Meanwhile, the City impleaded NYCTA and MTA in the employee’s action and asserted third-party claims for indemnification and contribution, based on a lease between NYCTA and the City as a property owner of certain transit facilities. Under article VI, § 6.8 of that lease agreement, NYCTA agreed to indemnify the City for liability “arising out of or in connection *319 with the operation, management[,] and control by the [NYCTA] ” of the leased property.[2]
NYCTA tendered its defense of these claims to Burlington, also as an additional insured under the BSI policy. Burlington accepted the defense, subject to the same reservation that NYCTA qualify as an additional insured under the policy endorsement. NYCTA did not demand, and Burlington did not submit, a withdrawal of this reservation.
Discovery in the employee’s federal lawsuit revealed that NYCTA failed to identify, mark, or protect the electric cable, and that it also failed to turn off the cable power. Documents further established that the BSI machine operator could not have known about the location of the cable or the fact that it was electrified. For example, in two internal memoranda, NYCTA acknowledged its sole responsibility for the accident. In the first, the NYCTA superintendent explained that the excavation equipment operators “were operating the equipment properly and had no way of knowing that the cables were submerged in the invert.” The second memorandum concluded that “this accident was primarily due to an inadequate/ ineffective inspection process for identifying job-site hazards involving buried energized cables.” Based on these revelations, Burlington disclaimed coverage of NYCTA and MTA, asserting that BSI was not at fault for the injuries and therefore NYCTA and MTA were not additional insureds under the policy.
The district court dismissed the employee’s claims against BSI with prejudice, and the City’s third-party claims against NYCTA without prejudice. Burlington thereafter settled the lawsuit for $950,000 and paid the City’s defense costs.
Burlington commenced the instant action in state court after disclaiming coverage for NYCTA and MTA. Initially, Burlington sought a declaratory judgment that it did not owe NYCTA and MTA coverage as additional insureds under BSI’s policy. After settling the employee’s action against the City, Burlington moved to amend its complaint to add a claim for contractual indemnification as the City’s subrogee under the lease with NYCTA.
*320 Supreme Court granted Burlington’s motion for summary judgment, concluding that NYCTA and MTA were not additional insureds because the policy limited liability to instances where BSI, as the named insured, was negligent. The court also granted Burlington’s motion to amend the complaint, finding that the anti-subrogation rule did not bar Burlington’s claim as the City’s subrogee. Burlington then moved for partial summary judgment on its contractual indemnification claim against NYCTA, which the court granted and subsequently entered judgment for Burlington for the $950,000 settlement amount, along with prejudgment interest, fees, and costs.
The Appellate Division reversed, denying plaintiff’s motions for summary judgment and to amend the complaint, and granting defendants’ cross motion for summary judgment on the first cause of action to the extent of declaring that defendants were entitled to coverage as additional insureds under the Burlington policy (132 AD3d 127 [1st Dept 2015]). The Court concluded that the named insured was not negligent, but “the act of triggering the explosion . . . was a cause of [the employee’s] injury” within the meaning of the policy (132 AD3d at 134-135). The Court also determined that as a consequence, it “necessarily follows that the anti-subrogation rule bars Burlington from recovering, as the City’s subrogee” (id. at 138). We granted Burlington leave to appeal (27 NY3d 905 [2016]).
II.
Burlington argues that under the plain meaning of the endorsement NYCTA and MTA are not additional insureds because the acts or omissions of the named insured, BSI, were not a proximate cause of the injury. Put another way, Burlington maintains that the coverage does not apply where, as here, the additional insured was the sole proximate cause of the injury.
In response, NYCTA and MTA also rely on the policy language, but claim that by its express terms the endorsement applies to any act or omission by BSI that resulted in injury, regardless of the additional insured’s negligence. They further argue that the Appellate Division properly concluded that BSI’s operation of its excavation machine provided the requisite causal nexus between injury and act to trigger coverage under the policy.
Burlington has the better argument. Applying the relevant legal principles to the policy language, we conclude that there *321 is no coverage because, by its terms, the policy endorsement is limited to those injuries proximately caused by BSI.
A.
“An insurance agreement is subject to principles of contract interpretation” (Universal Am. Corp. v National Union Fire Ins. Co. of Pittsburgh, Pa., 25 NY3d 675, 680 [2015]). Therefore, “[a]s with the construction of contracts generally, ‘unambiguous provisions of an insurance contract must be given their plain and ordinary meaning, and the interpretation of such provisions is a question of law for the court’ ” (Vigilant Ins. Co. v Bear Stearns Cos., Inc., 10 NY3d 170, 177 [2008] [citation omitted], quoting White v Continental Cas. Co., 9 NY3d 264, 267 [2007]).
The policy here states, in relevant part, that an entity is “an additional insured only with respect to liability for ‘bodily injury^ . . . caused, in whole or in part, by . . . [BSI’s] acts or omissions.” The defendants argue that the endorsement does not limit liability to cases in which an insured’s acts or omissions are negligent or otherwise legally actionable. Essentially, they advocate that “caused, in whole or in part” means “but for” causation. Under their reading of the policy, all that is necessary for an additional insured to be covered is that the insured’s conduct be a causal link to the injury. This is an incorrect interpretation of the policy language, which, by its terms, describes proximate causation and legal liability based on the insured’s negligence or other actionable deed.
B.
It is well established in our law that “but for” causation, or causation in fact, is “[t]he cause without which the event could not have occurred” (Black’s Law Dictionary [10th ed 2014], but-for cause; Dan B. Dobbs et al., Torts § 186 [2d ed 2011 & June 2017 Update]; see also Koehler v Schwartz, 48 NY2d 807, 808-809 [1979]; Lee S. Kreindler et al., New York Law of Torts § 8:3 [14 West’s NY Prac Series Aug. 2016 Update]). The term refers to a link in the chain leading to an outcome, and in the abstract does no more than state the obvious, that “[a]ny given event, including an injury, is always the result of many causes” (Dobbs § 189). However, not all “but for” causes result in liability and “[m]ost causes can be ignored in tort litigation” (id.). In contrast, “proximate cause” refers to a “legal cause” to which the Court has assigned liability (Derdiarian v Felix Contr. *322 Corp., 51 NY2d 308, 314 [1980]; see Hain v Jamison, 28 NY3d 524, 528-529 [2016] [“the determination of proximate cause involves, among other things, policy-laden considerations; that is, the chain of causation must have an endpoint in order ‘to place manageable limits upon the liability that flows from negligent conduct’ ”]). The dissent suggests that “proximate cause” and “but-for cause” may be equivalent concepts (dissenting op at 335), but the law is clear that the two are not synonymous (see Dobbs § 189). As the Court has explained, “ ‘because of convenience, of public policy, of a rough sense of justice, the law arbitrarily declines to trace a series of events beyond a certain point’ ” (Ventricelli v Kinney Sys. Rent A Car, 45 NY2d 950, 952 [1978], amended 46 NY2d 770 [1978], quoting Palsgraf v Long Is. R.R. Co., 248 NY 339, 352 [1928, Andrews, J., dissenting]).
Here, the Burlington policy endorsement states that the injury must be “caused, in whole or in part,” by BSI. These words require proximate causation since “but for” causation cannot be partial. An event may not be wholly or partially connected to a result, it either is or it is not connected. Stated differently, although there may be more than one proximate cause, all “but for” causes bear some connection to the outcome even if all do not lead to legal liability. Thus, these words — “in whole or in part” — can only modify “proximate cause” (see Dobbs § 189; Black’s Law Dictionary [10th ed 2014], proximate cause; Hain v Jamison, 28 NY3d at 529). Defendants’ interpretation would render this modification superfluous, in contravention of the rule that requires us to interpret the language “in a manner that gives full force and effect to the policy language and does not render a portion of the provision meaningless” (Cragg v Allstate Indem. Corp., 17 NY3d 118, 122 [2011] [citation omitted]).
NYCTA and MTA argue that the language “in whole or in part” was necessary in order to make clear that the parties did not mean “solely caused by.” Without the additional language, they contend, the endorsement would provide NYCTA and MTA coverage only if BSI’s acts or omissions were solely responsible for the loss. We find this argument is unpersuasive because the phrases “caused, in whole or in part, by” and “solely caused by” are not synonymous, either by their plain meaning or legal effect (see Argentina v Emery World Wide Delivery Corp., 93 NY2d 554, 560 n 2 [1999] [the Court considered “the proximate cause” to mean “a proximate cause” since “there may be more than *323 one proximate cause of an injury”]; see also NY PJI 2:70, Comment, Caveat 1).
The endorsement’s reference to “liability” caused by BSI’s acts or omissions further confirms that coverage for additional insureds is limited to situations where the insured is the proximate cause of the injury. Liability exists precisely where there is fault (Dobbs § 2 [“torts are traditionally associated with wrongdoing” and “(i)n the great majority of cases today, tort liability is grounded in the conclusion that the wrongdoer was at fault in a legally recognizable way”]). That the policy extends coverage to an additional insured “only with respect to liability” establishes that the “caused, in whole or in part, by” language limits coverage for damages resulting from BSI’s negligence or some other actionable “acts or omissions.”
Since the endorsement language stands on its own, we reject the parties’ and the dissent’s central premise that if the parties meant “proximate causation,” they would have included those words in the endorsement.[3] This argument ignores the import of the endorsement’s actual language and the rule that we must interpret that language “in a manner that gives [it] full force and effect . . . and does not render a portion of the provision meaningless” (Cragg, 17 NY3d at 122). As our law makes clear, it is enough that the parties used words that convey the legal doctrine of proximate causation. The fact that the parties could have used different language to communicate that legal concept is not fatal to Burlington’s argument. Giving the words chosen by the parties their plain and ordinary meaning, the endorsement describes proximate cause (see Vigilant Ins., 10 NY3d at 177). Contrary to the dissent’s view, our reference to legal terminology does not signal a departure from the rule that we apply a “plain and ordinary meaning” to the policy language (dissenting op at 334, 338-339). The endorsement expresses in. lay terms what the courts have long defined as “proximate causation.” Our conclusion as to the legal import of the parties’ chosen words does not subject the policy to some heightened standard of contract interpretation.
We similarly reject defendants’ invitation to adopt the First Department’s conclusion, based on its prior decisions, that the phrase “ ‘caused by’ ‘does not materially differ from the . . . *324 phrase, “arising out of” ’ ” and results in coverage even in the absence of the insured’s negligence (Burlington Ins. Co. v NYC Tr. Auth., 132 AD3d at 135, citing W & W Glass Sys., Inc. v Admiral Ins. Co., 91 AD3d 530 [1st Dept 2012]; National Union Fire Ins. Co. of Pittsburgh, PA v Greenwich Ins. Co., 103 AD3d 473 [1st Dept 2013]). Since the parties did not use the phrase “arising out of,” the First Department’s analogy is inapt. All that matters is the language adopted by the parties to the insurance policy at issue in this appeal. For the reasons we have explained, “caused, in whole or in part,” as used in the endorsement, requires the insured to be the proximate cause of the injury giving rise to liability, not merely the “but for” cause. Furthermore, “arising out of” is not the functional equivalent of “proximately caused by” (see Maroney v New York Cent. Mut. Fire Ins. Co., 5 NY3d 467, 472 [2005], citing Aetna Cas. & Sur. Co. v Liberty Mut. Ins. Co., 91 AD2d 317, 320-321 [4th Dept 1983] [reasoning that the phrase “arising out of” is “ordinarily understood to mean originating from, incident to, or having connection with”]; see also Worth Constr. Co., Inc. v Admiral Ins. Co., 10 NY3d 411, 415 [2008], quoting Maroney, 5 NY3d at 472; Regal Constr. Corp. v National Union Fire Ins. Co. of Pittsburgh, PA, 15 NY3d 34, 38 [2010], quoting Maroney, 5 NY3d at 472).
While we agree with the dissent that interpreting the phrases differently does not compel the conclusion that the endorsement incorporates a negligence requirement (dissenting op at 337 n 11), it does compel us to interpret “caused, in whole or in part” to mean more than “but for” causation (see Maroney, 5 NY3d at 472; Regal Constr., 15 NY3d at 39). That interpretation, coupled with the endorsement’s application to acts or omissions that result in liability, supports our conclusion that proximate cause is required here.
Case law from other jurisdictions makes a similar distinction. The Texas Supreme Court, for example, has held that “ ‘arise out of’ means that there is simply a ‘causal connection or relation,’ which is interpreted to mean that there is but for causation, though not necessarily direct or proximate causation” (Utica Natl. Ins. Co. of Texas v American Indem. Co., 141 SW3d 198, 203 [Tex Sup Ct 2004] [citation omitted]). Similarly, the Pennsylvania Supreme Court has explained that, “ ‘arising out of’ means causally connected with, not proximately caused by” (Manufacturers Cas. Ins. Co. v Goodville Mut. Cas. Co., 403 Pa 603, 607-608, 170 A2d 571, 573 [Sup Ct 1961]). Furthermore, *325 federal courts have rejected the interpretation espoused by the First Department. For example, in National Union Fire Ins. Co. of Pittsburgh, PA v XL Ins. Am., Inc., the Southern District of New York expressly disapproved the First Department’s approach, and held that “ ‘caused by’ requires a showing that [the named insured]’s operations proximately caused the bodily injury for which” indemnity was sought (2013 WL 1944468, *7, 2013 US Dist LEXIS 68467, *21 [SD NY, May 7, 2013, No. 12 Civ 5007(JSR)]; see also Wausau Underwriters Ins. Co. v Old Republic Gen. Ins. Co., 122 F Supp 3d 44, 52 [SD NY 2015] [“whether an injury was legally caused by a party’s actions is a much more demanding question than whether the injury arose out of those actions”]). The Eastern District of Pennsylvania, when presented with the same additional insured endorsement language at issue in this appeal, held that “caused by” required “proximate cause” in order to trigger coverage (Dale Corp. v Cumberland Mut. Fire Ins. Co., 2010 WL 4909600, *7, 2010 US Dist LEXIS 127126, *21 [ED Pa, Nov. 30, 2010, No. 09-1115]).
Here, BSI was not at fault. The employee’s injury was due to NYCTA’s sole negligence in failing to identify, mark, or deener-gize the cable. Although but for BSI’s machine coming into contact with the live cable, the explosion would not have occurred and the employee would not have fallen or been injured, that triggering act was not the proximate cause of the employee’s injuries since BSI was not at fault in operating the machine in the manner that led it to touch the live cable.[4]
III.
The dissent’s concern that our approach could threaten the stability and sureness of our bedrock rules of insurance policy interpretation” (dissenting op at 338) is unwarranted. Our opinion adheres to contract principles that the plain and ordinary meaning applies and that the parties may freely negotiate the terms of the policy. There is also no basis for the dissent’s speculation that our decision may have a “destruc *326 tive” impact on liability insurance coverage (dissenting op at 339). Our analysis should come as no surprise to the industry because the drafters of the language used here intended it to mean proximate causation.
In crafting the additional insured endorsement, NYCTA required that the policy include additional insured coverage using the latest ISO “Form CG 20 10 or equivalent.” In 2004— four years before the parties entered the construction contract and BSI purchased insurance from Burlington — the version of this ISO form was amended to replace the language “arising out of” with “caused, in whole or in part.” The change was intended to provide coverage for an additional insured’s vicarious or contributory negligence, and to prevent coverage for the additional insured’s sole negligence (see Dale, 2010 WL 4909600, *5, 2010 US Dist LEXIS 127126, *15 [“The ISO introduced this revised version of its widely used additional insured endorsements as a response to courts’ interpretations of its prior version”]). In describing its motivation for the 2004 amendment, ISO explained that it had “monitored various court decisions and found that courts in many disputes between insurers and insureds have construed broadly the phrase arising out of,” and further that “[s]ome courts have ruled that . . . the current additional insured endorsements do respond to injury or damage arising from the additional insured’s sole negligence” (Randy J. Maniloff, Coverage for Additional Insured-Vendors: Recent Markdowns by ISO and New York’s High Court, 19-36 Mealey’s Litig Rep Ins 11 [2005]). This, the ISO explained was “contrary to the original intent of the additional insured endorsements” (id.). At the heart of the amendment, therefore, was “the preclusion of coverage for an additional insured’s sole negligence” (id.).
It is therefore defendant’s interpretation that would lead to unanticipated results. The purpose of additional insured coverage is to “apportion . . . risks” (Trisha Strode, From the Bottom of the Food Chain Looking Up: Subcontractors and the Full Costs of Additional Insured Endorsements, 25 Constr Law [No. 3] 21, 21-22 [Summer 2005]). “By hiring a subcontractor, a general contractor exposes itself to . . . liability risks, including vicarious responsibility for its subcontractor’s negligence” and “[additional insured endorsements represent a way to apportion contractually these risks” (id. at 22). The rationale is to “make the party with the most control over the risk responsible for suffering the financial loss should it fail to prevent the loss” *327 (id.). Therefore, to extend coverage to the additional insureds under the circumstances of this case may frustrate the clear purpose of obtaining additional insured insurance in the first place (see 3 Couch on Insurance § 40:26 [June 2017 Update] [“coverage for an additional insured is typically limited to liability arising out of the named insured’s work or operations” and “additional insured status does not provide coverage to an additional insured for the additional insured’s own work or operations”]). It would allow NYCTA to compel a subcontractor to pay for injuries to its employee which NYCTA proximately caused — an outcome not intended by the parties and contrary to the plain language of the endorsement.
Of course, if the parties desire a different allocation of risk, they are free to negotiate language that serves their interests. Our decision should not be interpreted to limit the venerable right to contract on terms agreed to by the parties (see Chimart Assoc. v Paul, 66 NY2d 570, 574 [1986]).
IV.
Accordingly, the judgment appealed from and order of the Appellate Division brought up for review should be reversed, with costs, plaintiff’s motion for summary judgment on the first cause of action is granted, defendants’ cross motion for summary judgment on the first cause of action is denied, and the case remitted to the Appellate Division for further proceedings in accordance with this opinion.

. The record contains two separate documents referred to as “endorsements” to the Burlington policy. Although only one lists NYCTA, MTA, and the City as additional insureds, on this appeal the parties treat all three as listed under an “endorsement.” Since the disputed causation language is identical in both documents, we adopt the parties’ reference to the source of coverage as a single “endorsement.”

. MTA is not a named party to the lease because that entity did not exist at the time NYCTA and the City entered the agreement. However, NYCTA is an affiliate of MTA pursuant to section 1263 of the Public Authorities Law, added in 1965, which renders MTA the “parent agency” of NYCTA (see Metropolitan Transit Authority, New York City Transit — History and Chronology, http://web.mta.info/nyct/facts/ffhist.htm [last visited May 2, 2017]; Public Authorities Law § 1263).

. We find the dissent’s assertion of this argument especially perplexing given that the dissent claims our analysis is flawed for applying legal meaning to the plain words contained in the endorsement (dissenting op at 334).

. The dissent argues that “the policy contains coverage for defendants with respect to the underlying matter inasmuch as the accident was produced by and would not have occurred absent BSI’s operation of its excavation equipment” (dissenting op at 336-337 [citations, internal quotation marks and brackets omitted]). This interpretation would extend coverage to any and all but-for causes, including turning on and checking the machine the morning of the accident. Certainly the plain meaning of the phrase “caused by” does not ordinarily extend so far, nor could the dissent mean for coverage to extend to such remote circumstances.