# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| MT. HAWLEY INSURANCE COMPANY, a foreign insurance company, <br><br> Appellant/Cross-Respondent, <br><br> v. <br><br> ZURICH AMERICAN INSURANCE COMPANY, a foreign insurance company, <br><br> Respondent/Cross-Appellant. | DIVISION ONE <br><br> No. 77379-8-I <br><br> UNPUBLISHED OPINION <br><br> FILED: April 1, 2019 |

DWYER, J. — This appeal arises from a dispute over the equitable reapportionment of financial obligations between Mt. Hawley Insurance Company (Mt. Hawley) and Zurich American Insurance Company (Zurich) arising from a personal injury lawsuit against Mt. Hawley's named insureds, Granite Market Place, LLC (Granite) and JSH Properties, Inc. (JSH). Mt. Hawley seeks to recover the costs of defending and settling the lawsuit against its named insureds, asserting that Zurich breached its contractual obligations to defend and indemnify Granite and JSH as additional insureds. The trial court initially granted summary judgment in favor of Mt. Hawley, requiring Zurich to pay both the defense and settlement costs incurred by Mt. Hawley in the underlying personal injury action. However, following a motion for reconsideration, the trial court partially reversed its decision, ordering that Zurich need only reimburse Mt. Hawley's defense costs.

On appeal, Mt. Hawley seeks reversal of the trial court's order on reconsideration denying it reimbursement of settlement costs. For its part, Zurich seeks reversal of the order requiring it to reimburse Mt. Hawley's defense costs. Mt. Hawley asserts that it is entitled to recover its defense and settlement costs because it is equitably subrogated to its named insureds' claims against Zurich for Zurich's breach of its duty to defend Granite and JSH as additional insureds. Zurich asserts that Mt. Hawley's claims for reimbursement of defense costs became moot when it made a settlement offer to pay those costs. Because we conclude that Mt. Hawley's subrogation rights herein entitle it to reimbursement of its defense costs, but to only that remedy, and because Zurich's settlement offer did not render Mt. Hawley's claim moot, we affirm in all respects.

I

In August of 2012, Granite and JSH entered into a standard service agreement with Fisher & Sons, Inc., d/b/a JTM Construction (JTM), to perform repair work that included repairing a sidewalk defect outside of Granite's and JSH's building, Market Place, on Western Avenue in Seattle. The terms of the agreement required JTM to provide Granite and JSH with primary insurance coverage as additional insureds on its commercial liability insurance policy.

JTM was insured through a policy issued by Zurich. The policy included the following pertinent insuring language:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.

The Zurich policy also set forth the following endorsement on coverage for additional insureds:

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

**A. Section II – Who Is An Insured** is amended to include as an insured any person or organization who you are required to add as an additional insured on this policy under a written contract or written agreement.

**B.** The insurance provided to the additional insured person or organization applies only to "bodily injury", "property damage" or "personal and advertising injury" covered under Section I – **Coverage A – Bodily Injury And Property Damage Liability** and Section I – **Coverage B – Personal And Advertising Injury Liability**, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf,

and resulting directly from your ongoing operations or "your work" as included in the "products-completed operations hazard", which is the subject of the written contract or written agreement, performed for the additional insured person or organization.

. . . .

**F.** For the coverage provided by this endorsement:

**1.** The following paragraph is added to Paragraph **4.a.** of the Other Insurance Condition of Section **IV – Commercial General Liability Conditions:**

This insurance is primary insurance as respects our coverage to the additional insured person or organization, where the written

3

contract or written agreement requires that this insurance be primary and non-contributory with respect to any other policy upon which the additional insured is a Named Insured. In that event, we will not seek contribution from any other such insurance policy available to the additional insured on which the additional insured person or organization is a Named Insured.

In addition to requiring that they be added as additional insureds on JTM's policy, Granite and JSH obtained additional insurance through a policy issued by Mt. Hawley. The Mt. Hawley policy specifically provided that it is excess over "other primary insurance available to [Granite and JSH] covering liability for damages arising out of the premises or operations, or the products and completed operations, for which [Granite and JSH] have been added as an additional insured by attachment of an endorsement." The policy also contained a subrogation clause, stating:

**Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

The agreement between JTM and Granite and JSH also specified that the work would be completed based on "[a] mutually agreeable project schedule between JSH & JTM."[1] JTM obtained the necessary permit to perform sidewalk repairs on November 6, 2012, but did not begin performing the work until November 10, 2012. This schedule was approved by JSH.

Meanwhile, on November 7, 2012, Kim Jennett was walking on the

---

[1] The term of the contract was set at one year, but with the possibility of additional month to month extensions.

4

sidewalk on Western Avenue when her foot became stuck in a hole in front of Market Place. Jennett filed suit against Granite, which owned Market Place, against JSH, as Granite's property manager, and against JTM. Jennett alleged that her bodily injuries, resulting from her foot getting stuck in the hole, were caused by the negligence of JTM, Granite, and JSH.

Believing that Zurich's policy covered the Jennett lawsuit, Granite and JSH tendered their defense to JTM and, thus, to Zurich. Zurich declined to accept the tender, claiming that JTM had not yet started work at the time of the incident, that JTM was not responsible for the injury and, accordingly, Zurich was not required to defend Granite and JSH as additional insureds. Instead, Zurich defended only JTM, while Mt. Hawley defended Granite and JSH.

In the Jennett lawsuit, JTM successfully moved for summary judgment dismissal of all claims against it, asserting that it could not be liable because it did not begin work on the sidewalk until after Jennett was injured.[2] The remaining parties settled shortly thereafter. Mt. Hawley paid for Granite's and JSH's defense and settlement costs.

Subsequently, Mt. Hawley filed this lawsuit against Zurich, alleging that Zurich breached its duty to defend and indemnify Granite and JSH in the Jennett lawsuit. Mt. Hawley claimed that it was entitled to subrogation from Zurich, whether based on statute, equity, or contractual grounds, in amounts equaling Zurich's obligation for defense costs, indemnity, or other damages related to the

---

[2] Specifically, JTM contended that it was not a possessor of the sidewalk at the time of injury and therefore could not be liable under a possessor of land theory of liability.

5

Jennett lawsuit. Zurich denied the allegations.

Mt. Hawley moved for partial summary judgment, seeking a ruling that Zurich had breached its duty to defend Granite and JSH as a matter of law, and for recovery of Mt. Hawley's defense costs from Zurich. In turn, Zurich moved for summary judgment dismissal of all of Mt. Hawley's claims, asserting, in part, that the dismissal of all claims against JTM in the Jennett lawsuit meant that Zurich's policy did not offer coverage to Granite and JSH. The trial court initially granted Mt. Hawley's motion, ordering that Zurich had a duty to defend and a duty to indemnify Granite and JSH and had breached those duties.

Thereafter, Zurich successfully moved for reconsideration. On reconsideration, the trial court partially vacated its earlier ruling, concluding that Zurich had no duty to indemnify Granite and JSH, and therefore no duty to indemnify Mt. Hawley for the settlement costs it paid in the Jennett lawsuit. However, the trial court left undisturbed its judgment that Zurich had breached its duty to defend.

Mt. Hawley subsequently filed a notice of appeal from the trial court's order granting reconsideration and modifying its order of partial summary judgment. Zurich then filed a notice of cross appeal.[3]

II

Mt. Hawley's primary contention on appeal is that the trial court erred by granting reconsideration and ruling that Zurich was not required to reimburse Mt.

---

[3] The trial court also entered judgment for the amount of Mt. Hawley's defense costs. Although Zurich disputed the amount of interest, it paid the judgment amount.

6

Hawley for the settlement payment made by Mt. Hawley on behalf of Granite and JSH. Specifically, Mt. Hawley contends that Zurich must reimburse Mt. Hawley because (1) as a matter of law, Zurich's insurance policy provided coverage for Granite and JSH in the Jennett lawsuit, and (2) even if it did not cover the Jennett lawsuit, recovery of the settlement payment is appropriate as damages for Zurich's breach of its duty to defend Granite and JSH. In response, Zurich contends that (1) Mt. Hawley never received an assignment of rights from Granite and JSH and therefore does not have standing to sue Zurich for breach of its duty to defend and indemnify Granite and JSH, and (2) even if it could do so, the policy did not provide coverage for Granite and JSH in the Jennett lawsuit and, therefore, Mt. Hawley cannot recover the cost of its settlement payment in that lawsuit. We conclude that Mt. Hawley has standing to bring a claim against Zurich to recover its defense and settlement costs from the Jennett lawsuit, but that Mt. Hawley may recover only its defense costs because the Zurich policy did not provide coverage to Granite and JSH in that suit.

A

"[A]n appellate court will review a summary judgment ruling de novo and consider the same evidence heard by the trial court, viewing that evidence in a light most favorable to the party responding to the summary judgment [motion]." Slack v. Luke, 192 Wn. App. 909, 915, 370 P.3d 49 (2016) (citing Lybbert v. Grant County, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000)). "Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is

entitled to judgment as a matter of law." Quadrant Corp. v. Am. States Ins. Co.,
154 Wn.2d 165, 171, 110 P.3d 733 (2005).

B

As a preliminary matter, Zurich contends that Mt. Hawley lacks standing to
pursue the claims that Zurich breached its contractual duty to defend and
indemnify Granite and JSH in the absence of an explicit assignment of those
claims to Mt. Hawley.[4] In response, Mt. Hawley asserts that it has obtained the
right to pursue its claims through equitable and conventional subrogation. Mt.
Hawley has the better argument.

"Subrogation is an equitable doctrine the essential purpose of which is to
provide for a proper allocation of payment responsibility." Trinity Universal Ins.
Co. of Kansas v. Ohio Cas. Ins. Co., 176 Wn. App. 185, 200, 312 P.3d 976
(2013) (citing Mahler v. Szucs, 135 Wn.2d 398, 411, 957 P.2d 632 (1998)).
"Subrogation has two distinct types: conventional subrogation, which arises by
contract, and equitable subrogation, which arises by operation of law." Mut. of
Enumclaw Ins. Co. v. USF Ins. Co., 164 Wn.2d 411, 423, 191 P.3d 866 (2008)
(citing Mahler, 135 Wn.2d at 412).

> There are two features to subrogation. The first is the right to
> reimbursement. The second is the mechanism for the enforcement
> of the right. The right to reimbursement may arise by operation of
> law, termed legal or equitable subrogation, or by contract, called
> conventional subrogation. By virtue of payments made to or on
> behalf of an insured, an insurer has a right of reimbursement under
> general subrogation principles. That reimbursement may be
> enforced as a type of lien against any recovery the insured secures

---

[4] Zurich also asserts that such claims are moot because Zurich made a settlement offer
to pay all of Mt. Hawley's defense costs from the Jennett lawsuit. Zurich does not cite to any
authority to support its assertion that making an offer to settle a claim transforms a justiciable
case into a non-justiciable case. We decline Zurich's invitation to adopt such a rule.

> from a third party. Alternatively, the insurer, standing in the shoes of its insured, may pursue an action in the insured's name against the third party to enforce the reimbursement right.

Trinity, 176 Wn. App. at 200 (citations omitted) (citing Mahler, 135 Wn.2d at 411-13).

We considered an insurer's right to subrogation based on a breach of contract claim, specifically for breach of the duty to defend, in Trinity. Therein, insurer Trinity defended a general contractor, Millenium, in a personal injury action. Trinity, 176 Wn. App. at 190-91. Trinity was the primary insurer for a subcontractor of Millenium. Even though the complaint alleged only that Millenium was liable, Trinity represented Millenium as an additional insured because it was conceivable that some act or omission of the subcontractor was responsible for the plaintiff's injuries. Trinity, 176 Wn. App. at 191. As the case proceeded, Trinity came to believe that the subcontractor's acts or omissions were not responsible for the injuries alleged and tendered defense to Millenium's insurer, Ohio. Trinity, 176 Wn. App. at 191. Ohio refused to accept the tender. Trinity, 176 Wn. App. at 192. Trinity continued to defend Millenium and paid for a settlement of the lawsuit against Millenium. Trinity, 176 Wn. App. at 192. Trinity then sued Ohio, alleging several claims, including that Ohio breached its contractual duty to defend Millenium, that Ohio breached its duty of good faith in violation of the IFCA,[5] that Ohio's conduct violated the CPA,[6] and that Trinity was entitled to equitable contribution for Ohio's share of Millenium's defense. Trinity,

---

[5] Insurance Fair Conduct Act, RCW 48.30.010-.015.
[6] Washington Consumer Protection Act, ch. 19.86 RCW.

176 Wn. App. at 193.

Ohio did not appear or file an answer in Trinity's lawsuit and Trinity obtained a default judgment. Trinity, 176 Wn. App. at 193. Trinity claimed that Ohio was entirely responsible for the indemnification and defense costs of Millenium because Millenium, and not Millenium's subcontractor (Trinity's insured), was solely responsible for the underlying personal injury. Trinity, 176 Wn. App. at 207. When Trinity tried to collect on the judgment, Ohio filed a motion to vacate the default order and set aside the judgment. Trinity, 176 Wn. App. at 193.

On appeal, we vacated the default order and judgment in part, concluding that Trinity lacked standing to assert Millenium's statutory claims against Ohio through equitable or conventional subrogation.[7] Trinity, 176 Wn. App. at 203. However, we affirmed the judgment with respect to the defense and settlement costs of the Millenium litigation because Trinity had paid those costs and was therefore equitably subrogated to Millenium's contractual claim to recover those costs on the ground that Ohio had breached its duty to defend.[8] See Trinity, 176

---

[7] We held that conventional subrogation language practically identical to the language in Mt. Hawley's policy did not automatically assign claims from the insured to the insurer. Trinity, 176 Wn. App. at 203, 209 (the pertinent language stated "[i]f the insured has rights to recover all or part of any payment we have made under this Coverage Form, those rights are transferred to us"). We also concluded that equitable subrogation did not permit Trinity to assert Millenium's statutory claims because it had not paid any money under its coverage on any IFCA or CPA claim. Trinity, 176 Wn. App. at 203.

[8] We did not expressly state that Trinity's subrogation claim was based on Ohio's breach of its contractual duty to defend. However, because we vacated the judgment with regard to Trinity's statutory claims and affirmed the judgment as to all of Trinity's expenses incurred defending and settling Milleniumn's case (as opposed to merely a portion of those expenses as would be expected in an equitable contribution claim where both insurers had a duty to defend), there is no other claim through which Millenium could have had a right of reimbursement against Ohio for all of its defense and settlement expenses. See Trinity, 176 Wn. App. at 203, 208. Thus, Trinity's subrogation claim, as affirmed by us, must have been based on it asserting Millenium's contractual right to recover from Ohio for its breach of the duty to defend.

Wn. App. at 203, 208.

Herein, it is undisputed that Mt. Hawley paid the defense and settlement costs of Granite and JSH in the Jennett lawsuit. Therefore, Mt. Hawley has a right to assert the breach of the duty to defend claims of Granite and JSH "under general subrogation principles."[9] Trinity, 176 Wn. App. at 200.

C

Mt. Hawley's central contention on appeal is that the trial court erred when it reversed its initial order on summary judgment and concluded that Zurich is not required to reimburse Mt. Hawley for the cost of its settlement payment in the Jennett lawsuit. This is so, Mt. Hawley asserts, because Zurich breached its duty to defend Granite and JSH in the Jennett lawsuit and is therefore required to pay the costs of settlement as damages for breach of that duty, or, alternatively, because Zurich had a duty to indemnify Granite and JSH in the Jennett lawsuit because the lawsuit was within the scope of coverage provided by Zurich. In response, Zurich contends that its policy did not provide coverage to Granite and

---

As a matter of policy, this is sensible because Millenium itself would have been unable to assert a breach of contract claim against Ohio because it had not suffered any damages. Trinity had covered the expenses of litigating and settling the personal injury claims. However, someone, specifically Trinity, was still worse off because of Ohio's breach of its duty to defend and indemnify its insured. Therefore, because Trinity paid to satisfy the obligation that should have been satisfied by Ohio, equitable principles allowed Trinity to pursue the breach of contract claim that Millenium could not pursue in order to recover the amount paid.

[9] Mt. Hawley asserts that it also has a conventional subrogation right to the defense costs and settlement costs it paid in the Jennett lawsuit because of language in its policy with Granite and JSH stating that "[i]f the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us." However, in Trinity, we analyzed practically identical language in Trinity's insurance policy and concluded that it was not sufficient to establish a conventional subrogation right to Trinity's insured's claims. 176 Wn. App. at 203, 209 (concluding that "Trinity's claim arose from its own equitable subrogation rights as the paying insurer" and not from conventionally subrogated rights of the insured).

JSH in the Jennett lawsuit and that it thus had no duty to indemnify Granite and JSH in that lawsuit.[10]

"The rule regarding the duty to defend is well settled in Washington and is broader than the duty to indemnify." Woo v. Fireman's Fund Ins. Co., 161 Wn.2d 43, 164 P.3d 454 (2007) (citing Hayden v. Mut. of Enumclaw Ins. Co., 141 Wn.2d 55, 64, 1 P.3d 1167 (2000)). An insurer's duty to defend "arises at the time an action is first brought, and is based on the potential for liability." Truck Ins. Exch. v. VanPort Homes, Inc., 147 Wn.2d 751, 760, 58 P.3d 276 (2002). "[T]he duty to defend is triggered if the insurance policy *conceivably covers* the allegations in the complaint." Woo, 161 Wn.2d at 53.

"'The general rule regarding damages for an insurer's breach of contract is that the insured must be put in as good a position as he or she would have been had the contract not been breached.'" Woo v. Fireman's Fund Ins. Co., 150 Wn. App. 158, 170-71, 208 P.3d 557 (2009) (quoting Kirk v. Mt. Airy Ins. Co., 134 Wn.2d 558, 561, 951 P.2d 1124 (1998)). "In the failure-to-defend context, recoverable damages include: (1) the amount of expenses, including reasonable attorney fees the insured incurred defending the underlying action, and (2) the amount of the judgment entered against the insured." Kirk, 134 Wn.2d at 561 (citing Greer v. Nw. Nat'l Ins. Co., 109 Wn.2d 191, 202, 743 P.2d 1244 (1987)). However, the insurer can only be held liable for the amount of the judgment if

___

[10] Although Zurich seeks reversal of the trial court's order requiring it to reimburse Mt. Hawley for the defense costs it incurred in the Jennett lawsuit, Zurich does not actually dispute that it breached its duty to defend Granite and JSH. Instead, it bases its argument that we should reverse the trial court solely on its contentions that Mt. Hawley lacks standing and that Zurich's offer to settle with Mt. Hawley rendered Mt. Hawley's claims moot. We have rejected these arguments.

"the act creating liability is a covered event" and "the amount of the judgment is within the limits of the policy."[11] Kirk, 134 Wn.2d at 561 (citing Greer, 109 Wn.2d at 202-03). Thus, if Zurich's policy covered the claims against Granite and JSH in the Jennett lawsuit, then Mt. Hawley could recover the cost of its settlement payment.[12],[13]

D

Mt. Hawley contends that Zurich's policy provided coverage to Granite and JSH in the Jennett lawsuit because the policy covered claims for injuries if Granite's and JSH's *liability for the injuries* is caused by the acts or omissions of JTM and that JTM's omissions caused Granite's and JSH's liability for Jennett's injuries. In response, Zurich asserts that its policy covered only claims for injuries caused by the acts or omissions of JTM and did not provide any coverage for the claims against Granite and JSH in Jennett's lawsuit because Jennett's personal injury was not caused by an act or omission of JTM.[14]

---

[11] However, if an insurer breaches its duty to defend in bad faith, the insurer is estopped from denying coverage and must reimburse its insured's judgment or settlement costs. See Kirk, 134 Wn.2d at 562. "When the insurer breaches the duty to defend in bad faith, the insurer [is] held liable not only in contract for the cost of the defense, but also [is] estopped from asserting the claim is outside the scope of the contract and, accordingly, that there is no coverage. The coverage by estoppel remedy creates a strong incentive for the insurer to act in good faith, and protects the insured against the insurer's bad faith conduct." Kirk, 134 Wn.2d at 564 (citing Safeco Ins. Co. of Am. v. Butler, 118 Wn.2d 383, 394, 823 P.2d 499 (1992)). Herein, Mt. Hawley does not assert that Zurich breached its duty of good faith.

[12] Zurich does not contend that the settlement amount exceeds its policy limit.

[13] Mt. Hawley also contends that Zurich breached its contractual duty to indemnify Granite and JSH in the Jennett lawsuit. "The duty to indemnify hinges on the insured's actual liability to the claimant and actual coverage under the policy." Hayden, 141 Wn.2d at 64. Thus, regardless of whether Zurich must reimburse Mt. Hawley for its settlement payment pursuant to its breach of the duty to defend or because of its alleged breach of its duty to indemnify Granite and JSH, both of Mt. Hawley's arguments supporting reimbursement of its settlement costs depend on whether Zurich's policy actually covered the claims in the Jennett lawsuit. Therefore, resolution of whether the policy actually covered the claims from the Jennett lawsuit resolves the issue of whether Mt. Hawley is entitled to reimbursement from Zurich for its settlement payment.

[14] Zurich additionally contends that this issue was already resolved in the underlying Jennett lawsuit and asserts that collateral estoppel bars relitigation of whether JTM's acts or

"Interpretation of an insurance contract is a matter of law." McDonald v. State Farm Fire & Cas. Co., 119 Wn.2d 724, 730, 837 P.2d 1000 (1992).

> In construing the language of an insurance policy, the entire contract must be construed together so as to give force and effect to each clause. If the language in an insurance contract is clear and unambiguous, the court must enforce it as written and may not modify the contract or create ambiguity where none exists. However, if a policy provision on its face is fairly susceptible to two different but reasonable interpretations, the policy is ambiguous and the court must attempt to discern and enforce the contract as the parties intended.

Transcontinental Ins. Co. v. Wash. Pub. Utils. Dists'. Util. Sys., 111 Wn.2d 452, 456-57, 760 P.2d 337 (1988) (citations omitted). "An interpretation which gives effect to all of the words in a contract provision is favored over one which renders some of the language meaningless or ineffective." Seattle-First Nat'l Bank v. Westlake Park Assocs., 42 Wn. App. 269, 274, 711 P.2d 361 (1985) (citing Wagner v. Wagner, 95 Wn.2d 94, 101, 621 P.2d 1279 (1980)). "If terms are defined in a policy, then the term should be interpreted in accordance with that policy definition. "If terms are not defined, then they are to be given their 'plain, ordinary, and popular' meaning." Polygon Nw. Co. v. Am. Nat'l Fire Ins. Co., 143 Wn. App. 753, 767, 189 P.3d 777 (2008) (internal quotation marks omitted) (quoting Kitsap County v. Allstate Ins. Co., 136 Wn.2d 567, 576, 964 P.2d 1173 (1998)).

---

omissions caused Jennett's injury. This is so, Zurich asserts, because all the claims against JTM were dismissed on summary judgment. However, assuming *arguendo* that Zurich is correct—that the claims against JTM in the Jennett lawsuit were dismissed because it had no direct liability for Jennett's injuries—that does not necessarily foreclose the possibility that JTM's acts or omissions could have caused Granite and JSH to be liable for Jennett's injuries. The issue of Granite's and JSH's liability was never decided in the Jennett lawsuit because the parties settled. Thus, if Mt. Hawley is correct that Zurich's policy provided coverage for personal injuries where liability for the injury is caused by an act or omission of JTM, whether JTM caused such liability was never decided in the Jennett lawsuit.

Herein, the parties extensively dispute in their briefing the meaning of the following contract language in Zurich's policy:

**B.** The insurance provided to the additional insured person or organization applies only to "bodily injury", "property damage" or "personal and advertising injury" covered under Section I – **Coverage A – Bodily Injury And Property Damage Liability** and Section I – **Coverage B – Personal And Advertising Injury Liability**, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf,

and resulting directly from your ongoing operations or "your work" as included in the "products-completed operations hazard", which is the subject of the written contract or written agreement, performed for the additional insured person or organization.

Mt. Hawley contends that the language "with respect to liability for 'bodily injury', 'property damage' or 'personal and advertising injury' caused, in whole or in part, by" means that the policy required that JTM caused Granite and JSH to have liability for Jennett's injuries before it would provide coverage. Zurich contends that the quoted policy language required that JTM caused Jennett's injuries before it would provide coverage. Neither Mt. Hawley nor Zurich cite to any controlling Washington authority that supports their respective positions.[15]

---

[15] Instead, they cite to case law from New York. Mt. Hawley asserts that New York case law supports its position by citing to Kel-Mar Designs, Inc. v. Harleysville Ins. Co. of N.Y., 127 A.D.3d 662, 8 N.Y.S.3d 304 (2015). However, the policy language therein stated that the policy provided coverage for "liability caused, in whole or in part, by the acts or omissions" of the insured. Kel-Mar, 127 A.D.3d at 663. This is not the same as the disputed language in Zurich's policy and is therefore unhelpful when analyzing the Zurich policy. Zurich's chosen New York case, Burlington Ins. Co. v. NYC Transit Auth., 29 N.Y.3d 313, 79 N.E.3d 477 (2017), is more helpful because the policy language therein matches the Zurich policy more closely, but is far from definitive. The language in Burlington stated that an entity is "an additional insured only with respect to liability for 'bodily injury' . . . caused, in whole or in part, by" the insured's acts or omissions. 29 N.Y.3d at 321. While the court interpreted this to mean that the verb "caused"

Mt. Hawley asserts that Zurich's interpretation would make the language "with respect to liability for" pointless, and therefore that Zurich's interpretation must be inaccurate. Zurich disagrees. The parties also present additional arguments about the meaning of other components of the policy language.

However, we need not reach any of these, for the most part unsupported, arguments, because even if Mt. Hawley were correct about the interpretation of every aforementioned disputed clause in the policy, it is apparent that Zurich's policy did not provide coverage. This is so because Mt. Hawley bases its conclusion that the policy provides coverage on its assertion that JTM delayed fixing the sidewalk and that its failure to fix the sidewalk earlier was responsible for Granite and JSH having liability for Jennett's injuries. This is an argument that JTM's omission—its failure to fix the sidewalk before the incident when it had a duty to do so—caused Granite and JSH to have liability.[16] This presupposes that JTM had a duty to fix the sidewalk prior to the incident. However, the record shows that JTM did not undertake any obligation to complete the sidewalk repair before the day of the incident, and thus it could not possibly have omitted to repair the sidewalk earlier. Thus, Mt. Hawley's contention that Zurich's policy provided coverage to Granite and JSH fails.

Because Zurich's policy did not provide actual coverage to Granite and JSH for the claims asserted in the Jennett lawsuit, the trial court's order following

---

applied to "bodily injury" rather than to "liability for," it did not provide much in the way of analysis to explain why it chose such an interpretation. Burlington, 29 N.Y.3d at 322 ("the Burlington policy endorsement states that the injury must be 'caused, in whole or in part' by [the insured]").

[16] An "omission" is "apathy toward or neglect of duty." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, 1574 (2002). It is "[a] failure to do something; esp., a neglect of duty." BLACK'S LAW DICTIONARY 1260 (10th ed. 2014).

Zurich's motion for reconsideration correctly concluded that Zurich had no duty to indemnify Granite and JSH and thus was not required to reimburse Mt. Hawley for settlement costs. Additionally, because Zurich breached its duty to defend Granite and JSH, the trial court properly concluded that Zurich was required to pay Mt. Hawley's defense costs incurred defending Granite and JSH in the Jennett lawsuit.

III

Both Mt. Hawley and Zurich seek an award of attorney fees on appeal. Mt. Hawley asserts that it is entitled to fees on appeal pursuant to RAP 18.1 and Olympic S.S. Co. v. Centennial Ins. Co., 117 Wn.2d 37, 811 P.2d 673 (1991). Zurich asserts that it is entitled to fees pursuant to RAP 18.1, but offers no argument in support of its claim to fees. Neither party is entitled to an award of fees.

"Washington follows the American rule 'that attorney fees are not recoverable by the prevailing party as costs of litigation unless the recovery of such fees is permitted by contract, statute, or some recognized ground in equity.'" Panorama Vill. Condo. Owners Ass'n Bd. of Dirs. v. Allstate Ins. Co., 144 Wn.2d 130, 143, 26 P.3d 910 (2001) (quoting McGreevy v. Or. Mut. Ins. Co., 128 Wn.2d 26, 35 n.8, 904 P.2d 731 (1995)). This rule requires, initially, that a party must prevail in order to remain eligible for an attorney fees award. "In general, a prevailing party is one who receives an affirmative judgment in his or her favor." Riss v. Angel, 131 Wn.2d 612, 633, 934 P.2d 669 (1997).

Herein, Mt. Hawley seeks reversal of the trial court's order stating that

Zurich had no duty to indemnify Granite and JSH, and thus no duty to pay Mt. Hawley the costs of its settlement payment in the Jennett lawsuit. Because we affirm the trial court's order, Mt. Hawley is not the prevailing party and is thus not entitled to an award of fees on appeal.

For its part, Zurich fails to provide any argument as to why it should receive an award of fees. By failing to assert any right to recover fees pursuant to "'contract, statute, or some recognized ground in equity,'" Zurich does not demonstrate an entitlement thereto. Panorama, 144 Wn.2d at 143 (quoting McGreevy, 128 Wn.2d at 26). No fee award is ordered.

IV

On cross appeal, Zurich contends that the trial court improperly granted an award of prejudgment interest on the defense costs Zurich paid to Mt. Hawley. This is so, Zurich asserts, because Mt. Hawley unreasonably delayed litigation by refusing to accept Zurich's settlement offer to pay Mt. Hawley's defense costs.[17] In response, Mt. Hawley asserts that Zurich fails to show that it unreasonably delayed the litigation or that the trial court abused its discretion in awarding prejudgment interest.

"We review a trial court's order on prejudgment interest for abuse of discretion." Humphrey Indus., Ltd. v. Clay St. Assocs., LLC, 176 Wn.2d 662,

---

[17] Zurich also asserts that the case became moot when it made a settlement offer and that it was therefore improper for the trial court to award interest on a moot claim. However, as already discussed herein, making an offer to settle does not render a case moot.

Additionally, at oral argument, Zurich asserted for the first time that the trial court utilized an improper rate to calculate Mt. Hawley's award of prejudgment interest (as opposed to Zurich's assertion that any award of interest was improper). We do not consider arguments raised by a party for the first time at oral argument. See e.g., Swank v. Valley Christian Sch., 188 Wn.2d 663, 675 n.6, 398 P.3d 1108 (2017) ("Here, the parties did not brief this argument, which was raised for the first time at oral argument. As a result we decline to address it.").

672, 295 P.3d 231 (2013). We will reverse the trial court's decision only if it "is manifestly unreasonable, exercised on untenable grounds, or exercised for untenable reasons." Noble v. Safe Harbor Family Pres. Trust, 167 Wn.2d 11, 17, 216 P.3d 1007 (2009). In most cases with a liquidated judgment, "prejudgment interest is due as a matter of right." Colonial Imports v. Carlton Nw., Inc., 83 Wn. App. 229, 242, 921 P.2d 575 (1996). However, if an undue delay in completing litigation is attributable to the claimant, a trial court may disallow prejudgment interest. Colonial Imports, 83 Wn. App. at 245. Quoting from a Delaware superior court decision, the Colonial Import court explained that the type of undue delay potentially justifying the suspension of prejudgment interest is "'(1) a failure by the plaintiff or his attorney to take some action in the prosecution of a case at a time that would otherwise seem appropriate to a reasonable person or attorney, or (2) the taking of some action by the plaintiff or his attorney that bears absolutely no reasonable relation to the prosecution of the case or is otherwise impermissible.'" 83 Wn. App. at 246 (quoting Getty Oil Co. v. Catalytic, Inc., 509 A.2d 1123, 1126 (Del. Super. Ct. 1986)).

Herein, Zurich fails to identify any delay by Mt. Hawley in completing litigation, let alone an unreasonable one. Zurich bases its claim of undue delay solely on Mt. Hawley's choice not to accept its settlement offer, asserting that such behavior falls into the category of undue delay justifying the denial of prejudgment interest as set forth in Colonial. However, declining to accept a settlement offer does not delay prosecution of the case. Zurich does not point to any instance in the record where Mt. Hawley delayed the proceedings. Hence,

Zurich fails to show that it was an abuse of discretion for the trial court to grant an award of prejudgment interest.

Affirmed.

We concur:

_____
Dwyer, J.

_____

_____
Leach, J.