*Liberty Insurance Corp. v. Hudson Excess Insurance Co.*

# In the
# United States Court of Appeals
## for the Second Circuit

––––––––––––––––––

August Term 2024
Argued: March 12, 2025
Decided: August 13, 2025

––––––––––––––––––

Docket No. 23-1208

LIBERTY INSURANCE CORPORATION,

*Plaintiff-Appellee,*

v.

HUDSON EXCESS INSURANCE COMPANY,

*Defendant-Cross-Defendant-Appellant,*

NEW YORK MARINE AND GENERAL INSURANCE COMPANY,

*Defendant-Cross-Claimant.*

––––––––––––––––––

Before:          WALKER, WESLEY, and BIANCO, *Circuit Judges.*

––––––––––––––––––

This is a declaratory-judgment action involving whether an insurance company has a duty to indemnify the owner of a construction project's premises in an underlying personal injury action pending in state court. The subcontractor's employee brought the underlying action against the owner and general contractor

for injuries he sustained when the scaffold on which he was performing demolition work collapsed.

In the instant federal action, the owner's insurer, Liberty Insurance Corporation ("Liberty"), sought a declaration that the subcontractor's insurance company, Hudson Excess Insurance Company ("Hudson"), is obligated to defend and indemnify the owner against the employee's claims in the underlying state court action. Liberty claimed that the owner is an additional insured under the terms of the commercial general liability insurance policy that the subcontractor obtained from Hudson.

Following a bench trial, the district court (Cote, *J.*) entered a judgment declaring that Hudson has a duty to defend and indemnify the owner for the underlying state court action and that, pursuant to New York Insurance Law § 1213(d), Hudson must reimburse Liberty for its reasonable attorney's fees incurred in bringing this declaratory-judgment action.

We conclude that the district court properly determined that Hudson owes a duty to indemnify Liberty's insured. After a bench trial on stipulated facts and evidence, the district court appropriately determined that Hudson's insured proximately caused the injuries that are the subject of the underlying litigation. Despite Hudson's insistence to the contrary, a summary judgment decision as to contractual and common law indemnity entered by the state court after the district court's judgment does not change the result.

The district court erred, however, in granting Liberty attorney's fees in connection with this federal action pursuant to New York Insurance Law § 1213(d). A simple comma added during recodification of the statute is determinative of whether Hudson is entitled to a statutory safe-harbor provision that would exempt it from paying attorney's fees. The district court erroneously determined that the presence of the comma in Section 1113(a)(13) meant that Hudson was not eligible for the statutory safe-harbor provision. Though the district court based its conclusion on a reasonable interpretation of Section 1113(a)(13)'s plain text, that interpretation yields an absurd result: The New York Insurance Law would not authorize policies covering legal liability for bodily injury resulting from causes other than negligence in rendering expert, fiduciary, or professional service. We determine that the personal injury liability insurance

2

provided for in Section 1113(a)(13) is not limited to that caused by negligence in rendering expert, fiduciary, or professional service.

Accordingly, we **AFFIRM** the district court's judgment declaring that Hudson owes a duty of indemnity and **REVERSE** the district court's award of attorney's fees to Liberty.

———————

FOR PLAINTIFF-APPELLEE:          MARSHALL T. POTASHNER, Jaffe & Asher LLP, White Plains, NY.

FOR DEFENDANT-APPELLANT:          IGNATIUS J. MELITO (Michael F. Panayotou, *on the brief*), Melito & Adolfsen P.C., New York, NY.

———————

WESLEY, *Circuit Judge*:

This is a declaratory-judgment action involving whether an insurance company has a duty to indemnify the owner of a construction project's premises in an underlying personal injury action pending in state court. The subcontractor's employee brought the underlying action against the owner and general contractor for injuries he sustained when the scaffold on which he was performing demolition work collapsed.

In the instant federal action, the owner's insurer, Liberty Insurance Corporation ("Liberty"), sought a declaration that the subcontractor's insurance

3

company, Hudson Excess Insurance Company ("Hudson"), is obligated to defend and indemnify the owner against the employee's claims in the underlying state court action. Liberty claimed that the owner is an additional insured under the terms of the commercial general liability insurance policy that the subcontractor obtained from Hudson.

Following a bench trial, the district court (Cote, *J.*) entered a judgment declaring that Hudson has a duty to defend and indemnify the owner for the underlying state court action and that, pursuant to New York Insurance Law § 1213(d), Hudson must reimburse Liberty for its reasonable attorney's fees incurred in bringing this declaratory-judgment action.

We conclude that the district court properly determined that Hudson owes a duty to indemnify Liberty's insured. After a bench trial on stipulated facts and evidence, the district court appropriately determined that Hudson's insured proximately caused the injuries that are the subject of the underlying litigation. Despite Hudson's insistence to the contrary, a summary judgment decision as to contractual and common law indemnity entered by the state court after the district court's judgment does not change the result.

4

The district court erred, however, in granting Liberty attorney's fees in connection with this federal action pursuant to New York Insurance Law § 1213(d). A simple comma added during recodification of the statute is determinative of whether Hudson is entitled to a statutory safe-harbor provision that would exempt it from paying attorney's fees. The district court erroneously determined that the presence of the comma in Section 1113(a)(13) meant that Hudson was not eligible for the statutory safe-harbor provision. Though the district court based its conclusion on a reasonable interpretation of Section 1113(a)(13)'s plain text, that interpretation yields an absurd result: The New York Insurance Law would not authorize policies covering legal liability for bodily injury resulting from causes other than negligence in rendering expert, fiduciary, or professional service. We determine that the personal injury liability insurance provided for in Section 1113(a)(13) is not limited to that caused by negligence in rendering expert, fiduciary, or professional service.

Accordingly, we affirm the district court's judgment declaring that Hudson owes a duty of indemnity and reverse the district court's award of attorney's fees to Liberty.

## BACKGROUND

### I. Underlying State Court Action

An accident at a construction site, 45 John Street in Manhattan, precipitated the underlying personal injury action pending in state court. Liberty insured the owner of the premises, 45 John NY LLC ("45 John"). 45 John executed a contract with Avacon Management LLC ("Avacon"), whereby Avacon, as general contractor, would convert the commercial building on the premises into a residential space with ground floor retail. Avacon, in turn, contracted with Skittles Services Corp. ("Skittles") to work as a subcontractor. Hudson insured Skittles.

A Skittles employee, Jose Manuel Juarez ("Juarez"), was standing on a 12- to 14-foot-high scaffold and removing bricks from a wall to expose hidden beams when the scaffold collapsed. Juarez was not given protective gear, such as a harness or a hardhat, for working on the site.

Seeking to recover for his injuries, Juarez commenced an action in New York Supreme Court, New York County against 45 John and Avacon.[1] Juarez brought

---

[1] Juarez was unable to sue his employer, Skittles, by operation of Workers' Compensation Law § 11, which provides that Juarez's exclusive remedy against his employer is through a workers' compensation proceeding. *See* N.Y. Workers' Comp. Law § 11. Juarez brought this proceeding. A Workers' Compensation Law Judge determined, and the Workers' Compensation Board affirmed, that Juarez was "an employee of [Skittles] at the time of

claims for negligence and violations of New York Labor Law §§ 200, 240, and 241(6) as well as New York Industrial Code § 23-5.5, *see* N.Y. Comp. Codes R. & Regs. tit. 12, § 23-5.5. Juarez based his claims on allegations that 45 John and Avacon failed to comply with the relevant safety requirements related to scaffolding.

Avacon impleaded Skittles by filing a third-party complaint. Avacon brought claims against Skittles for common law indemnification and contribution, contractual indemnification and contribution, and breach of contract for failure to procure insurance coverage. 45 John asserted a cross claim against Skittles for contractual indemnification.

## A. The Skittles Contract

Avacon and 45 John's contractual indemnification claims in the third-party action were based on the Skittles Contract, formally titled the "Subcontract Agreement Rider (Contractor/Subcontractor)." Joint App'x at 564. That contract includes an indemnity provision, which requires Skittles, as subcontractor, to defend and indemnify Avacon and 45 John against liability for bodily injury

---

his accident" and was entitled to weekly compensation. *Employer: Skittles Servs. Corp.*, No. G2066545, 2018 WL 3322603, at *3–4 (N.Y. Workers' Comp. Bd. July 3, 2018).

"arising out of or resulting from the Work covered by this Contract Agreement to the extent such Work was performed by or contracted through [Skittles] or by anyone for whose acts [Skittles] may be held liable." *Id.*

The Skittles Contract also required Skittles to procure insurance to protect Avacon and 45 John "for claims arising out of or resulting from [Skittles'] Work under this Contract Agreement." *Id.* The Skittles Contract required that the insurance policy include contractual liability coverage and additional insured coverage for the benefit of Avacon and 45 John. It also expressly listed Avacon and 45 John as indemnified parties and additional insureds.

## B.     The Hudson Policy

Pursuant to the terms of the Skittles Contract, Skittles purchased an insurance policy with Hudson (the "Hudson Policy"). Hudson, organized in Delaware, "is not licensed as an insurance company" in New York and therefore is an unauthorized insurer. Joint App'x at 43; *see* N.Y. Ins. Law § 107(a)(10). The Hudson Policy provides commercial general liability ("CGL") coverage. The Hudson Policy contains an additional insured endorsement, which modifies the policy's coverage to add as an additional insured:

8

[1] Any person or organization for whom [Skittles] [is] performing operations when [Skittles] and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on [Skittles'] policy; and

[2] Any other person or organization [Skittles] [is] required to add as an additional insured under the contract or agreement described in Paragraph 1. above.

Joint App'x at 1017. Thus, the Hudson Policy requires a writing (such as the Skittles Contract) for parties to be added as additional insureds. The additional insured provision further states:

Such person(s) or organization(s) is an additional insured only with respect to liability for "bodily injury" . . . caused, in whole or in part, by:
a. [Skittles'] acts or omissions; or
b. The acts or omissions of those acting on [Skittles'] behalf;
in the performance of [Skittles'] ongoing operations for the additional insured.

*Id.* The insurance afforded to an additional insured, however, "[w]ill not be broader than that which [Skittles] [is] required by the contract or agreement to provide for such additional insured." *Id.*

C. **Tenders for Defense and Indemnity**

Shortly after Juarez filed the state court action, Avacon's insurer, New York Marine and General Insurance Company ("New York Marine"), demanded that

9

Hudson defend and indemnify Avacon and 45 John pursuant to the Skittles Contract and the Hudson Policy. Liberty then demanded that Hudson do the same for 45 John. Finally—roughly four years after Juarez commenced his action—Hudson disclaimed coverage, stating that "Juarez was not performing Skittles' ongoing operations (painting, taping, spackling, etc.) for Avacon or 45 John" but rather was "performing Avacon's operations for 45 John" as a "borrowed employee" at the time of the accident. *Id.* at 47–48.

## D. Summary Judgment Decisions

### 1. First Summary Judgment Decision

In September 2022, the state court entered a summary judgment decision on claims in both Juarez's main action and the third-party action. First, in the main action, the court granted Juarez's motion for summary judgment against Avacon and 45 John on Juarez's claim under Labor Law § 240(1). *See* N.Y. Lab. Law § 240(1) (imposing strict liability on contractors and owners for failure to construct and operate scaffolding as to give proper protection). The court also granted 45 John's motion for summary judgment dismissing Juarez's Labor Law § 200 claim and common law negligence claim. *See id.* § 200 (codifying the common-law duty to maintain a safe workplace).

10

In the third-party action, the state court denied 45 John's motion for summary judgment against Skittles on the contractual indemnification claim (which, again, was based on the Skittles Contract). The court found that "there is a question of fact as to whether [Juarez] was injured, not in the scope of his employment with Skittles, but within the scope of the work in the contract between Avacon and Skittles," i.e., the Skittles Contract. Joint App'x at 960.

Thus, in the main action, Juarez's claim under Labor Law § 241(6) remained against 45 John.[2] All claims in the third-party action remained.

### 2. Second Summary Judgment Decision

At oral argument, we learned from Hudson's counsel that, after briefing was complete in this appeal, the state court entered another summary judgment decision. In that November 2024 decision, the state court dismissed the third-party action against Skittles in its entirety, including the claims for contractual indemnification and contribution, and common law indemnification and contribution. As for the contractual indemnification and contribution claims, the court found that the indemnity provision of the Skittles Contract was invalid, i.e.,

---

[2] Claims against Avacon remained, including for common law negligence.

11

there was "no meeting of the minds as to give the indemnity provision any meaning." Dkt. No. 78 at 8. That is, "the material terms of the indemnification provision, specifically the scope of the work, were not defined nor understood by the parties, thus lacking the unmistakable intent to indemnify for the work that [Juarez] was engaged in at the time of the accident." *Id.* The court also found that Skittles had established that Juarez did not suffer a grave injury, thereby relieving Skittles of any liability for the common law indemnification and contribution claims brought against it. *See* N.Y. Workers' Comp. Law § 11 (providing that an employer is only liable for contribution or indemnity to a third party based on its employee's injuries where the third party proves that the employee sustained a "grave injury"). As a result, no claims against Skittles remain in the state court action.[3]

## II.    Federal Declaratory-Judgment Action

In February 2022, several months before the state court rendered its first summary judgment decision, Liberty commenced this declaratory-judgment action. It sought a declaration that, pursuant to the Hudson Policy, Hudson must

---

[3] Avacon appealed this decision to the First Department. To our knowledge, that appeal remains pending.

12

defend and indemnify 45 John on a primary basis (i.e., before other insurance policies are called upon) for the claims brought against it in the underlying action. Liberty also sought a money judgment for its past and future defense costs as well as attorney's fees for bringing this federal action.[4]

## A. Settlement on the Duty to Defend

On the eve of trial in this federal action, Hudson and New York Marine entered into a written settlement agreement with Liberty, acknowledging their duty to defend 45 John in the underlying action on a primary basis. Hudson and New York Marine each "agree[d] to be responsible for 50% of the past and future defense costs; however, they each owe 100% of the defense costs for 45 John." Joint App'x at 158. For Liberty's costs incurred before February 1, 2023, New York Marine and Hudson agreed to pay Liberty $32,262.79. New York Marine and Hudson also agreed to split any defense costs Liberty incurred after that date.

---

[4] Liberty sought similar relief against New York Marine and another insurer, neither of which are parties to this appeal.

## B.    District Court's Bench Trial

The district court held a bench trial based on facts and evidence stipulated by the parties. The parties did not call any witnesses. Instead, Hudson and Liberty agreed that

> the Court may determine any issues of fact and conclusions of law based on the below Stipulations or Agreed Statements of Fact, the parties' Proposed Findings of Facts and Conclusions of Law, the stipulated documents, the deposition transcripts, any additional documents the Court accepts into evidence, and the accompanying Memoranda of Law.

*Id.* at 24. The parties stipulated that the Skittles Contract applies to the project at 45 John Street.

The district court found that Hudson's insured, Skittles, proximately caused Juarez's injuries. Accordingly, the district court determined that Hudson owes a duty to indemnify 45 John in the underlying action. Further, the court concluded that Hudson must pay Liberty's attorney's fees in bringing this federal action because, pursuant to N.Y. Insurance Law § 1213(d), Hudson is an unauthorized insurer in New York and its failure to defend 45 John was "vexatious and without reasonable cause." *Id.* at 193. The district court rejected Hudson's argument that it qualified for a statutory exemption.

14

Accordingly, the district court entered a declaratory judgment in favor of Liberty. In relevant part, the district court declared that Hudson has a duty to both defend and indemnify 45 John in the underlying action, and that Hudson must reimburse Liberty for its reasonable attorney's fees incurred by bringing this federal action.

## DISCUSSION

This Court "review[s] the district court's findings of fact after a bench trial for clear error and its conclusions of law de novo." *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 119 (2d Cir. 2021); *see also* Fed. R. Civ. P. 52(a)(6). The district court's finding of proximate cause is a factual finding that is subject to clear error review. *See CARCO GROUP, Inc. v. Maconachy*, 718 F.3d 72, 79 (2d Cir. 2013). We will only set aside a district court's findings of fact if we are "left with the definite and firm conviction that a mistake has been committed." *Sacerdote*, 9 F.4th at 119.

### I. Duty to Indemnify

Hudson argues that it was "premature" for the district court to determine that Hudson has a duty to indemnify 45 John because the trier of fact in the underlying state court action must first resolve disputed factual issues and find that Skittles proximately caused the accident. It further argues, in supplemental

15

briefing, that the state court's November 2024 summary judgment decision—issued after the district court's decision in this action—establishes that it has no duty of indemnification.[5] We disagree.

We conclude that the district court appropriately determined that Hudson has a duty to indemnify 45 John. After a bench trial on stipulated facts and evidence, the district court did not err in finding that Hudson's insured proximately caused Juarez's injuries. The state court's later-issued summary judgment decision does not mandate a different result.

## A.    District Court's Proximate Cause Determination

An insurer may bring a federal declaratory-judgment action to seek a declaration regarding its or another insurer's duty to indemnify an insured in an underlying state court action. *See* 28 U.S.C. § 2201(a).

New York courts have long distinguished the duty to indemnify from the duty to defend. Unlike the duty to defend, which is triggered "whenever the allegations of the complaint 'suggest . . . a reasonable possibility of coverage,'" *BP*

---

[5] We requested supplemental briefing from the parties addressing the effect, if any, the state court's later-issued summary judgment decision has on the district court's determination that Hudson has a duty to indemnify 45 John in the underlying action.

16

*Air Conditioning Corp. v. One Beacon Ins. Grp.*, 8 N.Y.3d 708, 714 (2007) (citation omitted), the duty to indemnify is "determined by the actual basis for the insured's liability to a third person," *Servidone Constr. Corp. v. Sec. Ins. Co. of Hartford*, 64 N.Y.2d 419, 424 (1985). The duty to indemnify "requires a covered loss." *Id.* at 425.

Where, as here, "an insurance policy is restricted to liability for any bodily injury 'caused, in whole or in part,' by the 'acts or omissions' of the named insured, the coverage applies to injury proximately caused by the named insured." *Burlington Ins. Co. v. N.Y.C. Transit Auth.*, 29 N.Y.3d 313, 317 (2017). In other words, a finding of proximate cause is required for a loss to be covered under the policy. Thus, a finding of proximate cause must first be made before the duty to indemnify is declared. *See id.* at 324.

The district court appropriately made a finding of proximate cause before declaring Hudson's duty of indemnity. First, it recognized that the Hudson Policy's additional insured provision requires a determination of proximate cause. The additional insured provision here mirrors the language in *Burlington*—it covers a person or organization "only with respect to liability for 'bodily injury' . . . *caused, in whole or in part,* by: [a] [Skittles'] acts or omissions; or [b] [t]he acts or omissions of those acting on [Skittles'] behalf." Joint App'x at 1017

17

(emphasis added). Therefore, if Skittles proximately caused Juarez's bodily injury, then the Hudson Policy covers 45 John as an additional insured and, accordingly, Hudson owes a duty to indemnify 45 John.

The district court did not clearly err in determining, after a bench trial, that undisputed facts establish that Skittles proximately caused Juarez's injuries and, therefore, Hudson has a duty to indemnify 45 John for any damages that are awarded to Juarez in the underlying action. The district court found:

> Here, it is undisputed that Juarez was a Skittles employee, that Skittles was employed on the Project at 45 John, that Skittles built the scaffold from which Juarez fell, that a Skittles' employee directed Juarez to mount the scaffold to perform work on the Project, that no Skittles employee provided Juarez with protective gear, and that no external force acted upon the scaffold to cause it to collapse and injure Juarez.

*Id.* at 187. Therefore, the district court concluded, "[t]hese facts establish that Skittles was a proximate cause of Juarez's injury." *Id.*

Hudson argues that there are disputed factual issues that must be resolved in the underlying state court action, including whether Avacon directed Skittles employees to perform demolition work and whether Skittles built the scaffolds. This argument overlooks the simple fact that the district court made its

18

determinations after a bench trial[6] and ignores the parties' joint pretrial stipulation, in which Hudson and Liberty agreed that "the [district court] may determine any issues of fact and conclusions of law based on" the parties' stipulations, proposed findings of fact and conclusions of law, deposition transcripts, and other documents before the court. *Id.* at 24.

Consistent with this stipulation, the district court as factfinder appropriately made its proximate cause determination based on the facts and documents before it. Though Hudson argues that deposition testimony from a Skittles supervisor raises factual disputes, the district court considered this testimony along with testimony from Juarez.[7] The district court did not clearly err in concluding that a

---

[6] The cases Hudson cites to support its position were both at the summary judgment stage. *See Breeze Nat'l, Inc. v. Century Sur. Co.*, 170 A.D.3d 591, 592 (1st Dep't 2019) ("Because the record evidence indicates issues of fact as to whether [the additional insured] was solely responsible, or partially responsible for the accident, the issue of indemnification cannot be determined at this time."); *Vargas v. City of New York*, 158 A.D.3d 523, 525 (1st Dep't 2018), *aff'g as modified*, 2016 WL 3017752 (Sup. Ct. N.Y. Cnty. May 25, 2016); *see also* N.Y. C.P.L.R. 3212(b) (indicating that a motion for summary judgment "shall be denied if any party shall show facts sufficient to require a trial of any issue of fact").

[7] The Skittles supervisor testified that Skittles did not work on a scaffold during the project and that Avacon directed Juarez to build a scaffold. Notably, however, he was absent from the construction site when the accident occurred. Therefore, to the extent the district court declined to credit his testimony, it did not clearly err.

Skittles employee directed Juarez to mount the scaffold and that Skittles employees built the scaffold.

Based on the facts before it, the district court appropriately found that Skittles' negligence was a proximate cause, i.e., a "substantial cause of the events which produced [Juarez's] injury." *Scurry v. N.Y.C. Hous. Auth.*, 39 N.Y.3d 443, 453 (2023) (citation omitted). Therefore, we agree that Skittles is required to indemnify 45 John pursuant to the terms of the Hudson Policy.

Despite clear New York precedent requiring a covered loss (here, a finding of proximate cause) before a duty to indemnify is declared, *see Servidone*, 64 N.Y.2d at 423, Hudson maintains that the district court's determination was "premature." Appellant's Br. at 13. Hudson argues that the trier of fact in the underlying state court action must first find that Skittles proximately caused the accident before the district court can enter a declaratory judgment on the duty to indemnify.[8] Yet New

---

[8] Though Hudson attempts to rely on *Vargas v. City of New York*, that case merely reiterates that a court must first determine that the named insured proximately caused the accident before it can find that the insurer has a duty to indemnify an additional insured. *See* 158 A.D.3d at 525. Hudson also unpersuasively argues that *Servidone* does not apply because that case involved a settlement. Hudson misapprehends the scope of *Servidone*'s holding; it is not limited to cases involving a settlement. *See K2 Inv. Grp., LLC v. Am. Guarantee & Liab. Ins. Co.*, 22 N.Y.3d 578, 585 (2014) (rejecting the plaintiff's attempt to distinguish *Servidone* on the basis that it involved a settlement).

York law neither reserves this determination for the state court in the underlying action nor prohibits the federal court in the separate declaratory action from making this determination.[9]  In fact, New York courts have determined proximate cause within a separate declaratory-judgment action while an underlying personal injury action remained pending in a different court.  For instance, the First Department in a declaratory-judgment action did not require that a finding of proximate cause first be made in the underlying personal injury action—it made this determination itself.  *See Hanover Ins. Co. v. Phila. Indem. Ins. Co.*, 159 A.D.3d 587, 587–88 (1st Dep't 2018).  Finding that the additional insured (not the named insured) proximately caused the injuries at issue, the First Department declared that coverage was not available to the additional insured.  *See id.* at 588.

Thus, New York courts recognize that entering a declaratory judgment regarding the duty to indemnify in situations like those here is appropriate if the court in the declaratory action makes a finding of proximate cause.  This is

---

[9] Hudson relies on *Burlington*'s statement that "'proximate cause' refers to a 'legal cause' to which the Court has assigned liability."  29 N.Y.3d at 321 (citation omitted).  *Burlington*, however, did not hold that a court in an underlying personal injury action must first determine a defendant's liability before a court in a separate declaratory-judgment action can determine whether a named insured proximately caused the injuries at issue for purposes of declaring a duty of indemnity.

21

precisely what the district court did. We see no error in the district court's determination that Hudson has a duty to indemnify 45 John.

## B.  The State Court's Later-Issued Summary Judgment Decision Does Not Mandate a Different Result

As noted, after the district court entered its post-trial declaratory judgment, the state court dismissed the third-party action, including the claim against Skittles for contractual indemnification. The state court found that the "scope of Skittles' work" under the Skittles Contract "was not defined" and thus "there can be no meeting of the minds as to give the indemnity provision any meaning." Dkt. No. 78 at 8. In other words, the state court apparently found that there was no contract.[10] *See Wu v. Uber Techs., Inc.*, 43 N.Y.3d 288, 298 (2024) ("To form a binding contract under New York law, it is often said that there must be a meeting of the minds." (internal quotation marks and citation omitted)). This is significant because the Hudson Policy requires a writing naming an additional insured for that party to be covered under the additional insured endorsement. After

---

[10] The insurance provision of the Skittles Contract is similar to the indemnity provision in that it is limited to Skittles' work under the contract. The insurance provision requires Skittles to procure insurance coverage for "claims arising out of or resulting from [Skittles'] Work under this Contract Agreement." Joint App'x at 564.

reviewing the parties' letter briefs addressing the impact of this finding, we conclude that the state court's later-issued summary judgment decision does not change our holding here.

In its letter brief, Hudson argues that because "the court in the underlying action held that there was no meeting of the minds between the parties as to the scope of the work under the contract," Skittles was not required to procure additional insured coverage for either Avacon or 45 John for such work. Dkt. No. 78 at 4. Therefore, Hudson argues, the Hudson Policy's additional insured provision does not apply to the accident, and Hudson does not owe a duty to indemnify 45 John.[11]

Hudson fails to explain why the state court's later-issued summary judgment decision mandates vacating the district court's judgment. Nor do we find any reason to do so.

---

[11] Hudson also argues that the Hudson Policy limits 45 John's coverage to the scope of work established in the Skittles Contract. We need not consider this argument, however, because Hudson could have, but failed to, raise it before the district court and in its opening brief on appeal. *See In re Nortel Networks Corp. v. Sec. Litig.*, 539 F.3d 129, 133 (2d Cir. 2008); Joint App'x at 117–19 (indicating that Hudson's trial memorandum focused on whether Skittles' acts were in the performance of its "ongoing operations for the additional insured" rather than the policy language that the insurance "[w]ill not be broader than that which [Skittles is] required by the contract or agreement to provide").

23

### 1. The District Court Appropriately Entered a Declaratory Judgment During the Pendency of the State Court Action

First, while Hudson argues that the district court's determination was "premature," it did not ask the district court to stay or dismiss this federal action on this basis. That is, Hudson did not challenge the district court's exercise of discretion to consider this case during the pendency of the underlying state court case. *See Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 99–100 (2d Cir. 2023). Nonetheless, the district court did not abuse its discretion by entering a declaratory judgment before the resolution of the state court action.[12]

As an initial matter, nothing in New York law precluded the district court from considering this action. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995) ("The question for a district court presented with a suit under the Declaratory Judgment Act . . . is whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court." (internal quotation marks and citation omitted)).

---

[12] "[J]usticiability is *always* implicitly at issue—even where neither party has questioned [it]." *Admiral Ins. Co.*, 57 F.4th at 95 n.4 (internal quotation marks and citation omitted).

24

Further, the fact that "liability may be contingent does not necessarily defeat jurisdiction of a declaratory[-]judgment action." *Admiral Ins. Co.*, 57 F.4th at 92. Indeed, insurance coverage disputes have "become the paradigm for asserting jurisdiction despite future contingencies that will determine whether a controversy ever actually becomes real." *Id.* at 92–93 (citation omitted).

Because the duty to indemnify is triggered by a determination of liability, where liability has not yet been determined the Court "must find a practical likelihood that [a] third party" will prevail in litigation against the insured, or if relevant, the additional insured, in order to exercise its jurisdiction to declare an insurer's duty of indemnity. *Id.* at 93. Several factors inform the district court's decision to entertain a declaratory-judgment action. *Id.* at 99–100. These factors include:

> (1) whether the declaratory judgment sought will serve a useful purpose in clarifying or settling the legal issues involved; (2) whether such a judgment would finalize the controversy and offer relief from uncertainty; (3) whether the proposed remedy is being used merely for procedural fencing or a race to res judicata; (4) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; (5) whether there is a better or more effective remedy; and (6) whether concerns for judicial efficiency and judicial economy favor declining to exercise jurisdiction.

*Id.* (alterations adopted) (internal quotation marks and citations omitted).

25

The district court has "broad discretion" to weigh these factors. *Id.* at 100; *see also Wilton*, 515 U.S. at 286 (indicating that the Declaratory Judgment Act "confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants"). The district court's decision to hear a declaratory-judgment action is reviewed for abuse of discretion. *See Wilton*, 515 U.S. at 289–90.

The district court appropriately exercised its discretion to entertain this declaratory-judgment action, concluding that a "declaration of Hudson's duty to indemnify 45 John should not be delayed." Joint App'x at 189. In particular, the court considered the factors stated in *Admiral* and found that a declaration on Hudson's duty to indemnify 45 John "will serve a useful purpose," because it "will resolve uncertainty by informing the parties which insurance policy is responsible for satisfying any judgment against 45 John in the Underlying Action." *Id.* The court noted that "[t]here is no realistic doubt but that Juarez will prevail in the Underlying Action. He has already been awarded summary judgment on some of his claims." *Id.* The court also observed, "entering a decision at this time does not raise concerns about procedural fencing and in fact promotes judicial economy." *Id.*

26

One factor is particularly relevant, in light of the later-issued state court summary judgment decision. That is, "whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court." *See Admiral Ins. Co.*, 57 F.4th at 100. Using the facts and evidence the parties presented to it, the district court appropriately examined the status of the underlying state court action, including the claims remaining in both the main and third-party actions. At the time of the district court's decision, this included Avacon and 45 John's then-pending contractual indemnification claims against Skittles in the third-party action. The district court observed that the "state court determination on the scope of the work that Skittles was contractually bound to perform for Avacon" is a "separate inquiry" than that required for indemnification under the terms of the Hudson Policy. Joint App'x at 188.

In other words, the issue before the state court involved contractual indemnification under the specific terms of the Skittles Contract. In the state court's first summary judgment decision—the only one in play when the district court entered its declaratory judgment—the state court had found a question of fact as to whether Juarez was injured within the scope of work in the Skittles

Contract. Here, however, the district court was faced with a claim for indemnification pursuant to the terms of the Hudson Policy, which required "a writing in which Skittles agreed to add 45 John as an additional insured." *Id.* The Skittles Contract met this requirement. Accordingly, the district court appropriately concluded that entering a decision on Hudson's duty to indemnify 45 John pursuant to the terms of the Hudson Policy would not encroach on the state court proceeding.

More importantly, no party brought to the district court's attention that Skittles pressed an argument in the state court action that the Skittles Contract was invalid.[13] The district court therefore could not have anticipated that Skittles would make this argument and that the state court would accept it. One does not measure the district court's decisions by hindsight. A district court does not necessarily abuse its discretion in entering a declaratory judgment simply because a later state court decision is inconsistent with that judgment.[14] *See Admiral Ins. Co.*, 57 F.4th at 100.

---

[13] To our knowledge, Skittles first made this argument in connection with the state court's second summary judgment decision—after the district court entered its decision in this case.

[14] Hudson misunderstands the function of the *Admiral* factors. *Admiral Ins. Co.*, 57 F.4th at 99–100. It argues that the district court erred by using these factors to "justif[y] finding

### 2. Hudson's Conduct in This Federal Action

In the district court, Hudson stipulated that the Skittles Contract applies to the project at 45 John Street. The Skittles Contract required Skittles to procure insurance to protect 45 John; it then listed 45 John as an additional insured. This satisfied the requirement in the Hudson Policy's additional insured endorsement that there be a writing in which Skittles agreed to add 45 John as an additional insured. The district court appropriately relied on this stipulation and its effect in its decision. Indeed, in the federal action Hudson did not argue that the Skittles Contract—or any of its provisions—is invalid, either before the district court or in its initial briefing here.[15]

Moreover, Hudson has acknowledged that 45 John is covered under the Hudson Policy as an additional insured. In the Hudson/Liberty settlement

---

that a duty to indemnify is owed by Hudson." Hudson's Br. at 19. Hudson fails to appreciate that these factors are assessed as part of the district court's decision whether to decline to exercise jurisdiction.

[15] Nor can Hudson argue that Liberty is estopped from bringing its duty of indemnity claim or arguing that the Skittles Contract applies, so as to meet the Hudson Policy's requirement that an additional insured (45 John) be named in a writing. Collateral estoppel bars a party from relitigating an issue determined in a "prior proceeding" where certain conditions are present. *Conason v. Megan Holding, LLC*, 25 N.Y.3d 1, 17 (2015); *see Parker v. Blauvelt Volunteer Fire Co.*, 93 N.Y.2d 343, 349 (1999). The state court's November 2024 summary judgment decision is not a "prior proceeding"—it was rendered more than a year after the district court's August 2023 judgment.

agreement, Hudson both acknowledged its duty to defend 45 John and agreed to pay its past and future defense costs. Because the duty to defend an insured is "derived from the allegations of the complaint *and the terms of the [insurance] policy*," Hudson has acknowledged that 45 John is covered under the policy. *BP Air Conditioning Corp.*, 8 N.Y.3d at 714 (emphasis added) (citation omitted).

Based on the information provided to it, the district court appropriately entered a declaratory judgment on Hudson's duty to indemnify 45 John during the pendency of the underlying action. We see no reason to disturb the district court's judgment.

## II.    Attorney's Fees

Hudson also challenges the district court's decision to award attorney's fees to Liberty pursuant to New York Insurance Law § 1213(d) for bringing this federal declaratory-judgment action. Hudson argues that it is exempt from paying attorney's fees by operation of a statutory safe-harbor provision. *See* N.Y. Ins. Law § 1213(e). We agree.

Under New York Insurance Law § 1213(d), a court may award attorney's fees against an unauthorized foreign insurer if certain conditions are present:

30

> In any action against an unauthorized foreign . . . insurer upon a contract of insurance issued or delivered in this state to a resident thereof or to a corporation authorized to do business therein, if the insurer has failed for thirty days after demand prior to the commencement of the action to make payment pursuant to the contract, and it appears to the court that such refusal was vexatious and without reasonable cause, the court may allow plaintiff a reasonable attorney's fee and include such fee in any judgment rendered in such action.

*Id.* § 1213(d). Thus, the district court was entitled to award attorney's fees to Liberty for bringing this action if (1) Hudson is an unauthorized foreign insurer that provided an insurance policy to a corporation authorized to do business in New York; (2) before this action, Hudson failed to make payment within thirty days of a demand; and (3) Hudson's refusal to pay was vexatious and without reasonable cause.

The district court determined that these conditions were met. First, it found that Hudson (organized in Delaware and not licensed in New York) is an unauthorized insurer. Additionally, Hudson failed to defend 45 John for more than thirty days after receiving a demand. Finally, the court concluded that Hudson's failure to defend 45 John was vexatious and without reasonable cause because "the allegations in the state court pleadings triggered Hudson's duty to

31

defend 45 John." Joint App'x at 193. The district court therefore ordered that Hudson pay $4,032.84 in attorney's fees to Liberty.[16]

Hudson argues that Section 1213(e)'s safe-harbor provision applies, thereby exempting it from Section 1213 and its provision for attorney's fees. Section 1213(e)'s safe-harbor provision lays out a process whereby, if an unauthorized insurer (1) designates the superintendent of financial services as its agent for service of process and (2) issues its policy in accordance with Section 2105, it is exempt from Section 1213. *See* N.Y. Ins. Law § 1213(e); *see also id.* § 107(a)(41) (defining "superintendent"). Section 2105, in turn, permits a licensed excess line broker "to procure" specified types of insurance policies "from insurers that are not authorized to transact business in [New York]," including policies for personal injury liability insurance as provided in Section 1113(a)(13). *Id.* § 2105(a). The dispute here ultimately hinges on whether the Hudson Policy covers legal liability for personal injury as defined in Section 1113(a)(13).[17] *See id.* § 1113(a)(13).

---

[16] Section 1213(d) provides that, if the court does award attorney's fees, the fee "shall not exceed [12.5%] of the amount the court finds the plaintiff is entitled to recover against the insurer." N.Y. Ins. Law § 1213(d). Here, the $4,032.84 award is 12.5% of the $32,262.79 that the district court determined Hudson owes to Liberty for past defense costs in the underlying state court action.

[17] Pursuant to Section 1213(e), the Hudson Policy designates the Superintendent of Insurance as its agent for service of process. As for Section 2105, the parties do not

Section 1113(a) enumerates the "kinds of insurance which may be authorized" in New York. *Id.* § 1113(a). At the outset, this section clarifies that "[n]o kind of insurance shall include . . . insurance against legal liability for personal injury or death unless specified in this section." *Id.* Paragraph 13 of this section states:

> "Personal injury liability insurance," means insurance against legal liability of the insured, and against loss, damage or expense incident to a claim of such liability . . . **arising out of death or injury of any person, or arising out of injury to the economic interests of any person, as the result of negligence in rendering expert, fiduciary or professional service**, but excluding any kind of insurance specified in paragraph fifteen [workers' compensation and employers' liability insurance] except insurance to protect an insured against liability for indemnification or contribution to a third party held responsible for injury to the insured's employee arising out of and in the course of employment when such insurance is written pursuant to this paragraph and not written pursuant to paragraph fifteen of this subsection.

*Id.* § 1113(a)(13) (emphasis added).

The district court held that Hudson is not entitled to the Section 1213(e) safe harbor because Section 1113(a)(13) "does not apply to" the CGL insurance policy

---

dispute that a licensed excess line broker procured the Hudson Policy. In its trial brief before the district court, Hudson represented that its policy was procured by a New York broker. In its appellate brief, Hudson states that the Hudson Policy was "issued by an excess lines broker." Appellant's Br. at 29. Liberty clarifies that it "does not argue that the Hudson Policy was not issued legally under New York law." Appellee's Br. at 32.

Hudson provided to Skittles.  Joint App'x at 195.  In particular, the court found that Section 1113(a)(13) is limited to insurance providing coverage for legal liability for personal injury that is the "result of negligence in rend[er]ing expert, fiduciary or professional service."  *Id.*

Integral to the court's conclusion is its analysis of the **placement of a comma**. The district court concluded that, because a comma preceded the phrase "as the result of negligence in rendering expert, fiduciary or professional service," it modifies both "arising out of death or injury of any person" and "arising out of injury to the economic interests of any person."  Thus, under the district court's reading, Section 1113(a)(13) only covers loss arising out of "death or injury of any person" that is a result of negligence in rendering expert, fiduciary or professional service—not other causes of bodily injury (like construction work) that a CGL policy would cover.  If that is true, Section 1113(a)(13) does not authorize the very CGL policies Hudson and Liberty issued in this case.

On appeal, Hudson urges us to find that Section 1113(a)(13) does authorize its CGL policy, which covers legal liability for bodily injury resulting from an accident during construction work.

34

The New York Court of Appeals has not interpreted Section 1113(a)(13). *See Reyes v. City of New York*, 141 F.4th 55, 68 (2d Cir. 2025) (noting that, when interpreting a state statute, "a federal court looks first to whether the state's highest court . . . has spoken to the point at issue in a controlling decision").

Thus, we must "either predict how the New York Court of Appeals would resolve the question[] or certify the statutory interpretation question to the New York Court of Appeals for a definitive resolution." *Jones v. Cattaraugus-Little Valley Cent. Sch. Dist.*, 96 F.4th 539, 544 (2d Cir. 2024) (citation omitted). Because we can confidently do the former, we need not resort to the latter. *See Giuffre Hyundai, Ltd. v. Hyundai Motor Am.*, 756 F.3d 204, 209 (2d Cir. 2014) ("[W]e will not certify questions of law where sufficient precedents exist for us to make this determination." (citation omitted)).

New York courts have long recognized the fundamental principle that "a court, in interpreting a statute, should attempt to effectuate the intent of the Legislature." *Majewski v. Broadalbin-Perth Cent. Sch. Dist.*, 91 N.Y.2d 577, 583 (1998) (citation omitted); *see* N.Y. Stat. § 92. We therefore "begin with the statutory text, which is the clearest indicator of legislative intent." *People v. King*, 42 N.Y.3d 424, 427 (2024) (internal quotation marks and citation omitted). Relevant here, "the

literal language of a statute controls unless the plain intent and purpose of [the] statute would otherwise be defeated." *Lynch v. City of New York*, 35 N.Y.3d 517, 523 (2020) (internal quotation marks and citation omitted).

Thus, the court may, "[i]n a manner consistent with the text, . . . look to the purpose of the enactment and the objectives of the legislature" to discern its intent. *Lubonty v. U.S. Bank Nat'l Ass'n*, 34 N.Y.3d 250, 255 (2019). When considering the statute's context and legislative history, "New York courts give considerable weight in discerning legislative intent to lawmakers' contemporaneous interpretation[s] of a statute, especially those expressed in the Governor's Bill Jacket attached to all New York laws and the sponsor's Memorandum contained therein." *Reyes*, 141 F.4th at 69 (internal quotation marks omitted) (quoting *In re Knight-Ridder Broad., Inc. v. Greenberg*, 70 N.Y.2d 151, 158–59 (1987)).

A plain reading of Section 1113(a)(13) reveals that the phrase "as the result of negligence in rendering expert, fiduciary or professional service" modifies both "arising out of death or injury of any person" and "arising out of injury to the economic interests of any person." The statute defines personal injury liability insurance as including loss "arising out of death or injury of any person, or arising out of injury to the economic interests of any person, *as the result of negligence in*

36

*rendering expert, fiduciary or professional service*."   N.Y. Ins. Law § 1113(a)(13) (emphasis added).  Typically, "where general words occur at the end of a sentence, they refer to and qualify the whole."  *In re Budd v. Valentine*, 283 N.Y. 508, 511 (1940); *see also* N.Y. Stat. § 254 cmt.   Specifically, where a comma precedes a modifying clause, thereby setting off that clause from the preceding clauses, the modifying clause applies to each preceding clause.  *See A.J. Temple Marble & Tile, Inc. v. Union Carbide Marble Care, Inc.*, 87 N.Y.2d 574, 581 (1996) ("In this case, punctuation sets off the [modifying] clause from all of the [preceding clauses], indicating that it was intended to apply to each one."); *see also* Sutherland Statutes & Statutory Construction § 47:15 n.3 ("[W]here there is a comma before a modifying phrase, that phrase modifies all of the items in a series and not just the immediately preceding item.").[18]

Accounting for the comma before the phrase "as the result of negligence in rendering expert, fiduciary or professional service" clarifies that this phrase modifies the entire preceding series.  Thus, according to the plain language of the

---

[18] This Court has applied the same principle: "One of the methods by which a writer indicates whether a modifier that follows a list of nouns or phrases is intended to modify the entire list, or only the immediate antecedent, is by punctuation—specifically by whether the list is separated from the subsequent modifier by a comma."  *Am. Int'l Grp., Inc. v. Bank of Am. Corp.*, 712 F.3d 775, 781–82 (2d Cir. 2013).

statute, the personal injury liability insurance authorized to be issued in New York

is limited to injuries (including bodily injury) caused by professional negligence.

Put another way, the statute's text does not authorize insurance against legal

liability for bodily injury resulting from other causes. Therefore, it does not

authorize the CGL policies that would typically cover those injuries—such as the

policies Hudson and Liberty issued here. By this literal reading of the statute,

then, insurers cannot issue policies to cover legal liability for bodily injury

resulting from common causes. This is an absurd result.[19]

We reject this literal reading because, "[a]lthough statutes will ordinarily be

accorded their plain meaning, it is well settled that courts should construe them to

avoid objectionable, unreasonable or absurd consequences." *Long v. New York*, 7

N.Y.3d 269, 273 (2006); *see also* N.Y. Stat. § 145 ("A construction which would make

a statute absurd will be rejected."). Federal courts similarly consider this canon of

---

[19] As a practical matter, in the more than forty years since the current form of Section 1113(a) came into being, CGL policies have been used and recognized without issue. *See, e.g.*, *Regal Constr. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 15 N.Y.3d 34, 39 (2010) (affirming a determination that an insurer must defend and indemnify its additional insured under the terms of its CGL policy); *BP Air Conditioning Corp.*, 8 N.Y.3d at 711 (concluding that, pursuant to a CGL policy, an insurer had a duty to defend its additional insured in connection with an underlying personal injury action). Presumably, if these policies were not authorized in New York, the issue would have arisen in an earlier case. It seems it took a good while for the comma to be noticed.

statutory interpretation. *See Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982) ("[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available."). Along these lines, New York recognizes the inevitability of legislators' grammatical errors by providing that courts should construe the statutory language "as will best effectuate the legislative intent, without reference to the accurate grammatical construction of words, phrases, and sentences." N.Y. Stat. § 251. Thus, faced with an absurd result, we look to see if the legislature intended an alternative interpretation. *See A.J. Temple*, 87 N.Y.2d at 581 (permitting courts to reject a literal construction of a statute if "it is evident that a literal construction does not correctly reflect the legislative intent"). It did.

First, examining context, Section 1113(a) "has been said to enumerate exhaustively and to define the different kinds of insurance that may be underwritten in New York." 68 N.Y. Jur. Ins. § 35. Consequently, if Section 1113(a) does not authorize insurance against legal liability for bodily injury other than that resulting from professional negligence, then the Insurance Law does not authorize this type of coverage. Section 1113(a) itself makes this clear: "No kind of insurance shall include . . . insurance against legal liability for personal injury

or death unless specified in this section." N.Y. Ins. Law § 1113(a). While Section 1113(a) enumerates other types of authorized insurance, a couple of which include "injury," none authorizes coverage against legal liability for bodily injury as would be provided in a CGL policy. *See id.* § 1113(a)(3) ("Accident and health insurance"); *id.* § 1113(a)(15) ("Workers' compensation and employers' liability insurance"). Accordingly, the only place in Section 1113(a) that would authorize a CGL policy covering legal liability for bodily injury is Section 1113(a)(13).

The statute's legislative history supports a reading that Section 1113(a)(13) does in fact authorize insurance policies covering legal liability for bodily injury resulting from causes other than negligence in rendering expert, fiduciary, or professional service. In 1984, the Legislature recodified the New York Insurance Law, which was enacted in 1939. The Bill Jacket clarifies that the purpose of the recodification was "[t]o rearrange the existing provisions of the insurance law into a more logical sequence." Sponsors' Mem., Bill Jacket, L. 1984, ch. 367, at 5. It further referenced the purpose as stated in Section 102 of the bill codified at New York Insurance Law § 102: "The legislature hereby declares that the purpose of this chapter is to recodify, without substantive change, the insurance law in effect immediately prior to the effective date of this chapter."

The justification for recodification was:

> There has been no recodification of the insurance law since its last complete enactment in 1939.  Since that time, there have been many and varied amendments made to such law in a piecemeal manner.  It is now desirable and needful that such law be recodified to eliminate ambiguities and obsolete provisions and to enact a new law arranged in a clearer and simpler style.

Sponsors' Mem., Bill Jacket, L. 1984, ch. 367, at 5.

The Bill Jacket is replete with statements emphasizing that the intent of the recodification was not to make any substantive changes to the Insurance Law, but rather to simplify, clarify, and reorganize its provisions.  For instance, during the almost decade-long recodification process, the legislature set up additional safeguards to ensure that "no change of substance be made," including an "elaborate machinery . . . for double-checking, triple-checking, and even further checking of the product of the project staff."  Bill Jacket, L. 1984, ch. 367, at 13; *see also id.* at 16 ("The mandate to the project staff . . . has been to simplify and clarify, but make no change of substance.").  The project staff themselves were asked "to check the revisions to make sure that through inadvertence no change of substance had resulted."  *Id.* at 17.

Despite these efforts, however, the legislature inadvertently added a comma to Section 1113(a)(13), which significantly changed the meaning of that provision. From the time of the Insurance Law's 1939 enactment to its 1984 recodification, the provision authorizing "personal injury liability insurance" had no comma before the phrase "as the result of negligence in rendering expert, fiduciary or professional service."

The 1939 version provided:

> "Personal injury liability insurance," meaning insurance against legal liability of the insured, and against loss, damage or expense incident to a claim of such liability, arising out of the death or injury of any person, *or arising out of injury to the economic interests of any person as the result of negligence in rendering expert, fiduciary or professional service*, but not including any kind of insurance specified in paragraph fifteen.

1939 N.Y. Laws 2555 (emphasis added).

The 1982 version provided similarly:

> "Personal injury liability insurance," meaning insurance against legal liability of the insured, and against loss, damage or expense incident to a claim of such liability, and including an obligation of the insurer to pay medical, hospital, surgical and disability benefits to injured persons, and funeral and death benefits to dependents, beneficiaries or personal representatives of persons who are killed, irrespective of legal liability of the insured, arising out of the death or injury of any person, *or arising out of injury to the economic interests of any person as the result of negligence in rendering expert, fiduciary or professional service*, but not including any kind of insurance specified in paragraph fifteen.

42

N.Y. Ins. Law § 46(13) (McKinney 1982) (emphasis added).

The absence of the comma before "as the result of negligence in rendering expert, fiduciary or professional service" in both the 1939 and 1982 versions indicates that this phrase refers to only loss "arising out of injury to the economic interests of any person." *See* N.Y. Stat. § 254 ("Relative or qualifying words of clauses in a statute ordinarily are to be applied to the words or phrases immediately preceding, and are not to be construed as extending to others more remote . . . ."). Therefore, under the prior versions of the Insurance Law, personal injury liability insurance policies were *not* limited to bodily injury resulting from professional or fiduciary negligence. Because the legislature did not intend to make any substantive changes during recodification, we conclude that it did not intend to exclude from Section 1113(a)(13) insurance that had previously been authorized.

Because an alternative interpretation of Section 1113(a)(13) consistent with the legislature's intent is available, we need not certify the statutory interpretation question. *Cf. Article 13 LLC v. Ponce De Leon Fed. Bank*, 132 F.4th 586, 594 (2d Cir. 2025) (certifying a question where this Court was unable to discern the meaning

43

of a statute from its plain text or legislative intent). That is, Section 1113(a)(13) authorizes insurance policies (including CGL policies) covering legal liability for bodily injury resulting from causes other than professional or fiduciary negligence. A scrivener's error during recodification cannot substantially narrow the definition of "personal injury liability insurance" to such an extent that it yields an absurd result that is clearly contrary to the legislature's intent. Accordingly, we determine that, consistent with the legislature's intent, Hudson's CGL policy falls within the scope of Section 1113(a)(13) as a policy authorized in New York.

As a result, Hudson is entitled to claim the protections of the Section 1213(e) safe-harbor provision, thereby exempting it from Section 1213(d)'s provision for attorney's fees. We therefore reverse the district court's determination on attorney's fees.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment declaring that Hudson owes a duty of indemnity and **REVERSE** the district court's award of attorney's fees to Liberty.

44